# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| James Williams, | Case No.: 2:16-cv-3020-APG-VCF |
| Plaintiff, | **SCREENING ORDER ON SECOND AMENDED COMPLAINT** |
| v. | |
| Las Vegas Metropolitan Police Department, et al., | |
| Defendants. | |

James Williams, a former inmate of the Clark County Detention Center (CCDC), filed this pro se civil rights lawsuit under 42 U.S.C. § 1983 on December 29, 2016. ECF No. 1-1. On December 11, 2017, I screened the complaint and gave Williams 30 days to file an amended complaint. ECF No. 3. On January 9, 2018, Williams filed a first amended complaint, a motion to file another amended complaint, and a motion for an extension of time to file another amended complaint. ECF No. 5, 6, 7. After Magistrate Judge Ferenbach granted those motions, on February 13, 2018, Williams filed another motion for leave to file an amended complaint along with a second amended complaint. ECF No. 8, 9, 9-1. Magistrate Judge Ferenbach granted that motion to file the second amended complaint. ECF No. 10. The operative complaint therefore is the second amended complaint filed on February 13, 2018. ECF No. 9-1. I now screen Williams's second amended civil rights complaint as required by 28 U.S.C. § 1915.

## I.    SCREENING STANDARD

"[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B)(i)-(iii).  This provision applies to all actions filed *in forma pauperis*, whether or not the plaintiff is incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language.  Thus, when reviewing the adequacy of a complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), the court applies the same standard as under Rule 12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.").  Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).

The court must accept as true the allegations in the complaint, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  Allegations in *pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216, at 235-36 (3d ed. 2004)).  At a minimum, a plaintiff should state "enough

facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A *pro se* litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.     SCREENING OF SECOND AMENDED COMPLAINT

In the 115-page second amended complaint (SAC), Williams asserts thirty counts and seeks monetary damages and injunctive relief. ECF No. 9-1 at 112, 115.  He sues 37 defendants for events that took place in many different locations and on many different dates between 2015 and 2017.  Williams sues Clark County, Las Vegas Metropolitan Police Department (LVMPD), Sheriff Joe Lombardo, Correctional Officer Lavender, Sergeant Leavitt, Sergeant Peterson, Officer Stephens, Officer Phillips, Officer Schaefer, Officer Ruiz, Sergeant Ruiz, Sergeant Rose, Officer Peacock, CCDC Chaplain Bonnie Polley, Aramark, Correctional Officer D. Hamm, former County Commissioner Steve Sisolak, Captain Tomaino, County Manager Jeff Wells, Sergeant Cox, Officer Cipriano, Officer Vargas, Officer Banez, Officer Bill, Officer Garris, Judge Stuberski, Sergeant Baker, Judge Haffen, Officer Dobbins, Officer Jeong, Officer Hutchins, Officer Brokaw, Officer Chase, Officer Lara-Marquez, Officer Haynes, Officer Murray, and Officer Smith.[1] *Id.* at 1-13.  Most of these defendants were not defendants in the 11-page original complaint. ECF No. 4.

---

[1] Williams also sues Does 1-5. *Id.* at 17.  Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but subsequently can be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  If the true identity of any of the Doe Defendants comes to light during discovery, Williams may move to amend his complaint to assert claims against those defendants at that time.

## A. Counts I, II, and III

Counts I, II, and III are based on the same events that were the subject of the original complaint that I screened.

### 1. *Count I: Fourteenth Amendment - Excessive Force*

Count I of the SAC alleges the following: On April 21, 2016, at approximately 12:40 p.m., Williams was taken into custody by LVMPD officers and transferred to CCDC. ECF No 9-1 at 16. Because he was supposed to only do a walk-through, Williams was quickly taken to the male release area and not given the opportunity to eat. *Id.* At approximately 5:00 p.m., Williams was notified that he was not being released and was taken back to the pre-arrest area. *Id.* at 4. Williams promptly notified Lavender that he had not received anything to eat and requested that she get him a kosher tray. *Id.* Lavender rolled her eyes, continued her work, and did not respond to Williams's request. *Id.* In response, Williams yelled at her: "Bitch!!! Fuck You Bitch!!! You Ain't Shit!!!" *Id.*

In response, Does 1-5, acting under the orders of Sergeant Leavitt, placed Williams in a restraint chair. *Id.* at 17. Once an inmate is strapped to a restraint chair, it is LVMPD policy to keep the inmate there for at least two hours. *Id.* After being strapped to the chair, the only part of the body an inmate can move is his or her neck. *Id.* The chair is designed for an inmate to sit on his or her hands while officers routinely place handcuffs on the inmate so that the handcuffs are extremely and unnecessarily tight and dig into the inmate's skin, causing pain and suffering. *Id.* The ankle cuffs are designed to apply constant pressure to the top of an inmate's ankles and Achilles tendons, and officers are trained to routinely put these ankle cuffs on so that they are extremely and unnecessarily tight in order to cause an inmate undue pain and suffering. *Id.* at 17.

1 Once in the restraint chair, inmates are strapped by their thighs just above the knee, which keeps

2 their knees constantly pressing against one another and puts pressure on men's testicles. *Id.*

3       Williams suffered significant discomfort for his first 30 minutes in the restraint chair. *Id.*

4 at 6. During the next 30 minutes in the restraint chair, he was subjected to significant amounts of

5 pain. *Id.* After the first hour, the pain was almost unbearable, amounted to torture, and brought

6 Williams to tears. *Id.*

7       During his second hour in the chair, Williams begged both Sergeant Leavitt and Sergeant

8 Peterson to let him out of the chair, explaining to them that he was in agonizing pain. *Id.* Both

9 Leavitt and Peterson told him that they knew the chair hurt, that the chair was designed to hurt,

10 and that Williams could not get out of the chair for two hours per LVMPD policy. *Id.* Williams

11 later apologized to Lavender for cursing at her and asked her to let him out of the chair,

12 explaining that he was in pain. *Id.* at 7. Lavender responded that she knew it hurt, but that

13 Williams could not get out of the chair until he had done two hours. *Id.*

14       Williams's time in the restraint chair caused him pain, suffering, and emotional distress.

15 *Id.* Since this incident, Williams has had problems with erectile dysfunction, causing him a great

16 deal of stress and embarrassment. *Id.* Williams alleges this conduct was excessive force in

17 violation of the Fourteenth Amendment. *Id.* at 16.

18       A pretrial detainee is protected from conditions constituting improper punishment under

19 the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment Cruel and

20 Unusual Punishment Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1971). A pretrial detainee

21 states a claim for excessive force under the Fourteenth Amendment if: (1) the defendant used the

22 force purposely or knowingly, and (2) the force was objectively unreasonable. *Kingsley v.*

23 *Hendrickson*, 135 S.Ct. 2466, 2472-73 (2015).

Liberally construing the SAC, Williams states a colorable due process claim for excessive force.[2] The complaint alleges that Lavender, Leavitt, Peterson, and Does 1-5 purposely and knowingly subjected Williams to objectively unreasonable force when they put him in the painful restraint chair for two hours with the understanding that it would cause him pain. Williams alleges these defendants took these actions pursuant to a specific LVMPD policy that required them to leave him in the painful chair for two hours. This claim will proceed against defendants Lavender, Leavitt, Peterson, and LVMPD. This claim also will proceed against Does 1-5 when Williams learns their identities.

### 2.   Count II:  Fourteenth Amendment – Denial of Food

Count II of the SAC alleges the following: It is Williams's sincerely held religious and spiritual belief that he is to eat a diet consistent with Mosaic law. ECF No. 9-1 at 9. Denying him a kosher tray violated his sincerely held religious beliefs. *Id.* Once he was released from the restraint chair, Williams was not offered any food until breakfast the next day. *Id.* However, the food offered was not kosher, and Williams was not offered any kosher food while he was at CCDC. *Id.* Williams alleges this violated his Fourteenth Amendment right to due process. *Id.*

A pretrial detainee's claim against individual defendants based on the conditions of confinement is evaluated under the Fourteenth Amendment's due process clause. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (en banc). For a pre-trial detainee to state a colorable conditions of confinement claim, the plaintiff must allege facts sufficient to show: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious

---

[2] This liberal construction is for screening purposes only.

harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Williams fails to state a colorable due process claim. In my original screening order, I told Williams that, in an amended complaint, he should identify who denied him food that he could consume and for how long. ECF No. 3 at 7. I also advised Williams that I may dismiss a claim without further notice if, in his amended complaint, Williams did not allege what each defendant did for each particular cause of action. *Id.* at 11. I reminded Williams of this requirement in a subsequent order. ECF No. 8 at 2.

In Count II of the SAC, Williams does not say that he did not eat for a day or two; he alleges only that he was not "offered" kosher food while he was at CCDC. However, even if I construe Count II as alleging that Williams did not eat for a day or two, Count II identifies no defendants. ECF No. 9-1 at 21.

Furthermore, in the entire SAC Williams identifies only defendant Lavender as denying him food at the time of the events at issue in Count II. With respect to Lavender, Williams alleges in Count I only that she denied him food when he asked for it on one occasion, approximately four hours after arriving at CCDC. *Id.* at 16. Williams vaguely alleges that he was not offered food after he was released from the chair until breakfast the next morning, but he does not allege who, if anyone, knew he did not eat. *Id.* More significantly, alleging that a defendant denied a detainee food for less than a day is not sufficient to show that the defendant intentionally exposed the detainee to circumstances that a reasonable officer would have

7

appreciated exposed the detainee to a substantial risk of suffering serious harm. In addition,

Williams does not allege which defendant, if any, intentionally and knowingly denied him food

he could eat the next day. In short, Williams does not allege facts sufficient to show that any

defendant intentionally and knowingly denied Williams kosher food for a period of time that

jeopardized his health, and he does not allege that any defendant other than Lavender was told

that Williams needed kosher food but denied him kosher food. Williams therefore has not

alleged facts sufficient to show that a reasonable person in any defendant's position would have

understood that there was a high risk to Williams's health. I therefore dismiss this.

### 3. Count III: First Amendment – Free Exercise of Religion

Count III of the SAC alleges the following: Williams alleges that he was deprived of "his

First Amendment right to free exercise of religion by denying him kosher food." ECF No. 9-1 at

22. Count III does not include any other allegations.

To raise a viable claim under the Free Exercise Clause, a prisoner must initially make a

showing that the defendant has substantially burdened a sincerely held religious belief. *Shakur v.*

*Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If that belief is substantially burdened, "the

regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*,

482 U.S. 78, 89, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987). At the summary judgment stage, courts

evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness"

test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).[3] *O'Lone v. Estate of Shabazz*, 482

---

[3] Under *Turner*, (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) where "there are alternative means of exercising the right that remain open to prison inmates . . . courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation"; (3) if "accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials"; and (4) the absence of "ready alternatives" to a

U.S. 342, 349 (1987); *see also Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir. 2011)

(analyzing the *Turner* factors applied during summary judgment).

   Once again, despite my prior instructions, Williams does not identify which defendant is

the subject of this count.  The only defendant who the SAC more broadly alleges did not provide

him with kosher food is Lavender.  In Count I, Williams alleges that he "notified Lavender that

he had not received anything to eat and that she get him a kosher tray," but that she did not do so.

ECF No. 9-1 at 16.  Although it appears that Williams may be alleging that Lavender did not

provide him with any food and did not draw a line between kosher food and other food, I will

liberally construe these allegations as alleging that Lavender did not give Williams food because

he wanted kosher food.  I therefore find that the SAC alleges a colorable First Amendment free

exercise of religion claim against Lavender.  This claim therefore will proceed against her.

   **B.  Counts IV through XXX**

   When Williams moved for an extension of time to file an amended complaint, he stated

he wished to set all viable claims before the court. ECF No. 6 at 1.  Magistrate Judge Ferenbach

told Williams that he may not amend the complaint to add unrelated claims involving a different

defendant. ECF No. 8 at 2.  Williams then filed a 115 page, 30-count complaint. ECF No. 9-1.

   Persons may be joined in one action as defendants if "any right to relief is asserted

against them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact

common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  In addition, "a party

asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or

---

particular prison regulation is evidence that it is reasonable and not "an exaggerated response to
prison concerns." *Turner*, 482 U.S. at 89–90 (citations and internal quotations omitted).

alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Thus, unrelated claims against different defendants belong in different lawsuits.[4] *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that district court should not have permitted the plaintiff to join 24 defendants and approximately 50 distinct claims in a single suit because unrelated claims against different defendants belong in a different suit to prevent a "mishmash of a complaint").

None of the new claims (Counts IV through XXX) is based on the matters that were the basis of the claims in the original complaint and that are now the basis for Counts I, II, and III of the SAC. Williams includes numerous conclusory allegations against the LVMPD,[5] who Williams named as a defendant in the original complaint and in Count I of the SAC. Aside from the LVMPD, none of the defendants in the new claims was a defendant in the original complaint and they are not defendants in Counts I, II, and III of the SAC. The new counts that do mention the LVMPD include only conclusory allegations and do not include facts sufficient to state a claim against it. As I previously informed Williams, in order to state a colorable claim, he must allege <u>facts</u>, not conclusions. ECF No. 3 at 2-3.

The LVMPD is a political subdivision of the state and may sue or be sued in its own name. Nev. Rev. Stat. § 280.280(4). To state a colorable claim against the LVMPD, a plaintiff must allege a theory of municipal liability. A municipality may not be held liable merely because it employs someone who violates a person's constitutional rights. *Monell v. Dep't of*

---

[4] Williams may not bring all the new claims in one new suit unless the pleadings meet the requirements of these rules. Although this may require Williams to file multiple new suits, he must comply with the Federal Rules of Civil Procedure, as outlined above.

[5] However, some of the new claims do not include allegations against the LVMPD. *See, e.g.,* ECF No. 9-1 at 33, 76-77, 81-84, 109-11.

*Social Serv. of City of N.Y.*, 436 U.S. 658, 691 (1978). A municipality may be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). To state a claim for municipal liability against the LVMPD under § 1983, Williams must allege the existence of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels" that resulted in a violation of his civil rights. *Monell v. Dep't of Social Serv. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Merely including a conclusory allegation that there is a policy or custom is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Williams must go beyond bare assertions and plead facts sufficient to show that there is a policy or custom. *Id.* at 678-81.

There are circumstances in which a failure to train may represent a policy for which the municipality is responsible and liable. *City of Canton*, 489 U.S. at 388-90. However, merely alleging that the existing training program is inadequate for a class of employees, such as police officers, is not sufficient to state a claim. *Id.* at 389. The plaintiff must allege facts sufficient to show that the training program was inadequate in relation to the tasks the particular officers must perform. *Id.* at 390. The plaintiff also must allege facts sufficient to show that the failure to adequately train caused the plaintiff's constitutional injury and was closely related to the plaintiff's injury. The mere fact that a particular officer is not satisfactorily trained, or that the training may occasionally be negligently administered, or that an employee makes a mistake or fails to comply with the training is not sufficient to show such causation. *Id.* at 390-91. In addition, to be liable for inadequate training, a municipality's failure to train must reflect deliberate indifference to constitutional rights. *Id.* at 391-92. To adequately allege deliberate

11

1  indifference, a plaintiff must allege facts sufficient to show that the inadequacy of the training

2  was the result of a deliberate and conscious choice of the defendant despite knowing of the

3  inadequacy of the training and risk to inmates. *Id.* at 389-92.

4  Williams fails to adequately state a colorable claim for municipal liability against the

5  LVMPD.  Some of the new claims in the SAC that mention the LVMPD allege that an officer

6  who allegedly violated Williams's rights was employed by the LVMPD. *See, e.g.*, ECF No. 9-1

7  at 61, 64, 73, 78, 88.  As discussed above, Williams cannot state a claim against the LVMPD

8  merely because it employed someone who allegedly violated his rights.

9  Of the new counts in the SAC that attempt to hold the LVMPD liable based on a theory

10  of municipal liability, those counts include only conclusory allegations of policies, practices, and

11  customs.  For example, in Count IV of the SAC, Williams alleges that "there has been a policy,

12  practice, and custom promulgated by LVMPD to show a deliberate indifference to the State and

13  Federal Constitutions; furthermore, upon information and belief, LVMPD has trained its officers

14  to violate the Constitutions in the discharge of their duties." ECF No. 9-1 at 23.  Count IV does

15  not allege facts sufficient to show that Williams suffered a constitutional violation, much less

16  that the LVMPD caused it.

17  Furthermore, in Count IV, Williams has not alleged facts sufficient to show that there is a

18  policy.  He makes only a conclusory, vague, and speculative allegation that there is a policy or

19  custom to violate constitutional rights.  Williams also does not allege what particular training

20  was inadequate in relation to any particular tasks.  He merely makes the vague, speculative, and

21  conclusory allegation that "upon information and belief, LVMPD has trained its officers to

22  violate the Constitutions in the discharge of their duties."  Williams does not allege facts

23  sufficient to show who was responsible for that inadequate training.  In addition, he does not

allege facts sufficient to show that it was inadequate training that caused a particular constitutional violation. Williams also does not allege facts sufficient to show deliberate indifference by any person or any particular training inadequacy. Thus, for numerous reasons, Williams fails to state a colorable claim against the LVMPD in Count IV of the SAC.

Williams's other new claims attempting to allege municipal theories of liability against the LVMPD are likewise deficient. In some of the claims, Williams makes the general and conclusory allegation that the LVMPD has failed to properly train employees and has a policy of showing deliberate indifference to constitutional rights. *See, e.g.,* ECF No. 9-1 at 93, 98, 108. Williams makes more conclusory allegations in other claims, such as alleging that the LVMPD has policies and practices of retaliating against people who exercise their right to access the courts or exercise their first amendment rights and alleging that the LVMPD has policies of harassing people on the Las Vegas strip who have coolers and are known to sell water. *Id*. at 31-32, 35, 38, 66, 68, 72. In none of the new claims does Williams allege sufficient facts to state a theory of municipal liability against the LVMPD.

Because none of the new claims in Counts IV through XXX concerns the matters that are the subject of the first three claims, and because Williams does not state colorable claims in those new counts against any of the defendants in Counts I through III, I dismiss without prejudice Counts IV through XXX.

**III.    CONCLUSION**

IT IS HEREBY ORDERED that the operative complaint is the second amended complaint filed on February 13, 2018. ECF No. 9-1.

1    IT IS FURTHER ORDERED that Count I, alleging a due process claim for excessive

2  force, will proceed against defendants Lavender, Leavitt, Peterson, and the LVMPD, and it will

3  proceed against Does 1-5 when Williams learns their identities.

4    IT IS FURTHER ORDERED that Count II, alleging a due process claim for failure to

5  offer Williams kosher food is dismissed without prejudice.

6    IT IS FURTHER ORDERED that Count III, alleging a First Amendment free exercise of

7  religion claim, will proceed against defendant Lavender.

8    IT IS FURTHER ORDERED that Counts IV through XXX are dismissed without

9  prejudice.

10    IT IS FURTHER ORDERED that any defendant not mentioned in this conclusion is

11  dismissed without prejudice.

12     IT IS FURTHER ORDERED that the Clerk of Court **SHALL ISSUE** summonses for

13  defendants Lavender, Leavitt, Peterson, and the LVMPD, **AND DELIVER THE SAME**, to the

14  U.S. Marshal for service.  The Clerk **SHALL SEND** to Williams **four** USM-285 forms.  The

15  Clerk also **SHALL SEND** a copy of the second amended complaint (ECF No. 9-1) and a copy of

16  this order to the U.S. Marshal for service on the defendants.  Williams shall have **30 days** within

17  which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as

18  to each Defendant on each form.  Within **20 days** after receiving from the U.S. Marshal a copy

19  of the USM-285 forms showing whether service has been accomplished, Williams must file a

20  notice with the Court identifying which defendants were served and which were not served, if

21  any.  If Williams wishes to have service again attempted on an unserved defendant, then a

22  motion must be filed with the Court identifying the unserved defendants and specifying a more

23

1  detailed name and/or address for those defendants, or whether some other manner of service

2  should be attempted.

3      IT IS FURTHER ORDERED that henceforth, Williams shall serve upon the defendants

4  or, if appearance has been entered by counsel, upon the defendants' attorney, a copy of every

5  pleading, motion or other document submitted for consideration by the court.  Williams shall

6  include with the original paper submitted for filing a certificate stating the date that a correct

7  copy of the document was mailed to the defendants or their counsel.  The court may disregard

8  any paper which has not been filed with the clerk, and any paper received that fails to include a

9  certificate of service.

10      Dated:  January 25, 2019.

11

12                                    _____
                                       ANDREW P. GORDON
                                       UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23