James Williams
Name
1817 Cedar Ave
Las Vegas, NV 89101

_____
Prison Number

FILED
ENTERED                    RECEIVED
                           SERVED ON
                    COUNSEL/PARTIES OF RECORD

FEB 1 3 2018

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

James Williams,           )
              Plaintiff,  )
                          )
        vs.               )
                          )   CASE NO. 2:16-cv-03020-APG-VCF
see additional,           )   (To be supplied by the Clerk)
page for defendants       )
                          )   AMENDED
_____,    )   CIVIL RIGHTS COMPLAINT
                          )   PURSUANT TO
_____,    )   42 U.S.C. § 1983
                          )
_____,    )
              Defendant(s). )

## A. JURISDICTION

1)   This complaint alleges that the civil rights of Plaintiff, James____.
                                                    (Print Plaintiff's name)

who presently resides at Clark County, NV____, were

violated by the actions of the below named individuals which were directed against

Plaintiff at CCDC and within Clark Cnty on the following dates
        (institution/city where violation occurred)

4/21/2016____,    4/21/2016____, and 4/21/2016.
   (Count I)          (Count II)          (Count III)

County of Clark (Clark County),
Las Vegas Metropolitian Police Dept.,
Clark County District Attorney's Office,
Joe Lombardo,
Lavender,
Schaeffer,
Ruiz,
Sgt. Rose,
Peacock,
Bonnie Polley,
Aramark,
D. Hamm,
Steve Sisolak,
Capt. Tomaino,
Bromley,
Jeff Wells,
Sgt. Cox,
Cipriano,
Vargas,
Banez,
Bill,
Garris,
Judge Stoberski,
Sgt. Baker,
Judge Haffen,
Dobbins,
Jeong,

1A

Hutchins,
Brokaw,
Chase,
Lara-Marquez,
Haynes,
Murray,
Smith,
                    Defendants

4/21/2016  ,   11/3/2016  ,   1/5/2017 ,
(Count IV)      (Count V)       (Count VI)

1/5/2017  ,   January, 2017 ,   1/15/2017 ,
(Count VII)    (Count VIII)      (Count IX)

1/5/17 – 7/23/17,   5/10/17 – 7/28/17,   6/25/2016 ,
(Count X)           (Count XI)            (Count XII)

July 2015 – pres.,   8/9/2015 ,   8/12/2015 ,
(Count XIII         Count IV       (Count XV)

10/1/2015  ,   2/13/2016 ,   2/17/2016 ,
(Count XVI)     (Count XVII)   (Count XVIII)

4/21/2016  ,   6/23/2016 ,   7/1/2016 ,
(Count IXX)     (Count XX)     (Count XXI

7/14/2016  ,   9/17/2016 ,   9/22/2016 ,
(Count XXII)    (Count XXIII)   (Count XXIV)

9/30/2016  ,   10/4/2016 ,   11/7/2016 ,
(Count XXV)     (Count XXVI)   (Count XXVII)

11/14/2016  ,   11/17/2016 ,   9/9/15 – Pres.,
(Count XXVIII)   (Count IXXX)    (Count XXX)

1B

**Make a copy of this page to provide the below**
**information if you are naming more than five (5) defendants**

2) Defendant <u>Clark County</u> resides at <u>500 Grand Central Pkwy</u>,
          (full name of first defendant)                  (address if first defendant)
and is employed as <u>County of Clark</u> . This defendant is sued in his/her
                   ✓ (defendant's position and title, if any)
___ individual  ✓ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: <u>Promulgated policies, practices and</u>
<u>customs that violated Plantiff's state and Federal</u>
<u>rights</u>

3) Defendant <u>Las Vegas Metropolitian Police Dp</u> resides at <u>400 Martin Luther King Blvd</u>
          (full name of first defendant)                (address if first defendant)
and is employed as <u>Police Dept.</u> . This defendant is sued in his/her
                 ✓ (defendant's position and title, if any)
___ individual  ✓ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: <u>Promulgated policies, practices and customs</u>
<u>that violated Plantiff's state and Federal Rights</u>

4) Defendant <u>Joe Lombardo</u> resides at <u>400 Martin Luther King Blvd.</u>
          (full name of first defendant)               (address if first defendant) ✓
and is employed as <u>LVMPD Sheriff</u> . This defendant is sued in his/her
               ✓ (defendant's position and title, if any)
✓ individual  ✓ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: <u>Promulgated policies, practices and customs</u>
<u>that violate Plantiff's rights and failed to properly</u>
<u>train his employees.</u>

5) Defendant <u>Lavender</u> resides at <u>400 Martin Luther King Blvd.</u>
          (full name of first defendant)              (address if first defendant)
and is employed as <u>Corrections Officer</u> . This defendant is sued in his/her
              (defendant's position and title, if any)
✓ individual  ✓ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: <u>Showed a deliberate indifference</u>
<u>and failed to intervene.</u>

2

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

6 ) Defendant <u>Sgt. Leavitt</u> resides at <u>400 Martin Luther King Blvd.</u>
    (full name of first defendant)                    (address if first defendant)
and is employed as <u>LVMPD Sergeant</u>. This defendant is sued in his/her
                    (defendant's position and title, if any)
✓ individual  ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Showed deliberate indifference and
failed to intervene</u>

7 ) Defendant <u>Sgt. Peterson</u> resides at <u>400 Martin Luther King Blvd.</u>
    (full name of first defendant)                    (address if first defendant)
and is employed as <u>LVMPD Sergeant</u>. This defendant is sued in his/her
                    (defendant's position and title, if any)
✓ individual  ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Showed a deliberate indifference
and failed to intervene.</u>

8 ) Defendant <u>Stephens</u> resides at <u>400 Martin Luther King Blvd.</u>
    (full name of first defendant)                    (address if first defendant)
and is employed as <u>LVMPD Officer</u>. This defendant is sued in his/her
                    (defendant's position and title, if any)
✓ individual  ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Interfered with interstate commerce
and violated Plaintiff's inalienable rights.</u>

9 ) Defendant <u>Phillips</u> resides at <u>400 Martin Luther King, Blvd.</u>
    (full name of first defendant)                    (address if first defendant)
and is employed as <u>LVMPD Officer</u>. This defendant is sued in his/her
                    (defendant's position and title, if any)
✓ individual  ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Interfered with commerce; extorting
Plaintiff of inalienable rights.</u>

2   A

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

10 ) Defendant _Schaefer_____ resides at _400 Martin Luther King_
    (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual  _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _Interfered with commerce resulting in_
_extortion of inalienable rights_

11 ) Defendant _Ruiz_____ resides at _400 Martin Luther King_
    (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual  _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _interfered with commerce resulting in_
_extortion of Plaintiff's inalienable rights_

12 ) Defendant _Sgt. Rose_____ resides at _400 Martin Luther King_
    (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Sergeant_____ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual  _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _Showed a deliberate Indifference_

13 ) Defendant _Peacock_____ resides at _400 Martin Luther King_
    (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Officers_____ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual  _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _Showed a deliberate indifference_

2  B

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

14 ) Defendant <u>Bonnie Polley</u> resides at <u>400 Martin Luther King</u>
(full name of first defendant)                              (address if first defendant)
and is employed as <u>CCDC Chaplin</u> . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>denied Plaintiff's sincerley held</u>
<u>right for a Kosher diet</u>

15 ) Defendant <u>Aramark</u> resides at _____
(full name of first defendant)                              (address if first defendant)
and is employed as <u>Kitchen contractor</u> . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Providen non-Kosher food and violated</u>
<u>Plaintiff's sincerley held beliefs.</u>

16 ) Defendant <u>D. Hamm</u> resides at <u>400 Martin Luther King</u>
(full name of first defendant)                              (address if first defendant)
and is employed as <u>Corrections Officer</u> . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Attempted to chill I amendment</u>
<u>activity.</u>

17 ) Defendant <u>Steve Sisolak</u> resides at _____
(full name of first defendant)                              (address if first defendant)
and is employed as <u>County Commissioner</u> . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: <u>Conspired to conduct the affairs of</u>
<u>Clark County through a pattern of racketeering</u>
<u>activity</u>

2 C

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

18 ) Defendant _Cpt. Tomaino_ resides at _400 Martin Luther King._
      (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Captain_ ___. This defendant is sued in his/her
           (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _Conspired to obstruct, delay and affect commerce resulting in extortion of Plaintiff's inalienable rights._

19 ) Defendant _Bromley_ resides at _400 Martin Luther King_
      (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Officer_ . This defendant is sued in his/her
           (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff of inalienable rights._

20 ) Defendant _Jeff Wells_ resides at _500 Grand Central Pkwy._
      (full name of first defendant)          (address if first defendant)
and is employed as _County Manager_ . This defendant is sued in his/her
           (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _Conspired to obstruct, delay and affect commerce, resulting in extortion of Plaintiff's inalienable rights_

21 ) Defendant _Sgt. Cox_ resides at _400 Martin Luther King._
      (full name of first defendant)          (address if first defendant)
and is employed as _LVMPD Sergeant_ . This defendant is sued in his/her
           (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff of inalienable rights_

2 D

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

22 ) Defendant _Cipriano_ resides at _400 Martin Luther King_
  (full name of first defendant)   (address if first defendant)
and is employed as _LVMPD Officer_ . This defendant is sued in his/her
  (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted plaintiff of inalienable rights_

23 ) Defendant _Vargas_ resides at _400 Martin Luther King_
  (full name of first defendant)   (address if first defendant)
and is employed as _LVMPD Officer_ . This defendant is sued in his/her
  (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff of inalienable rights_

24 ) Defendant _Banez_ resides at _400 Martin Luther king_
  (full name of first defendant)   (address if first defendant)
and is employed as _LVMPD Officer_ . This defendant is sued in his/her
  (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted plaintiff of inalienable rights_

25 ) Defendant _Bill_ resides at _400 Martin Luther king_
  (full name of first defendant)   (address if first defendant)
and is employed as _LVMPD officer_ . This defendant is sued in his/her
  (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff of inalienable rights_

2 E

**Make a copy of this page to provide the below**
**information if you are naming more than five (5) defendants**

26 ) Defendant Earris _____ resides at 400 Martin Luther King,
          (full name of first defendant)                    (address if first defendant)
and is employed as LVMPD officer _____ . This defendant is sued in his/her
      ✓ individual   ✓ official capacity. (Check one or both). Explain how this defendant was
            (defendant's position and title, if any)
acting

under color of law: extorted Plaintiff of inalienable rights
_____

27 ) Judge
     Defendant Stoberski _____ resides at 200 Lewis Ave
          (full name of first defendant)                    (address if first defendant) ✓
and is employed as Pro Temp Judge _____ . This defendant is sued in his/her
      ✓ individual   ✓ official capacity. (Check one or both). Explain how this defendant was
            (defendant's position and title, if any)
acting

under color of law: Conducted the affairs of Clark County
through racketeering activity and anti-competitive conduct

28 ) Defendant Sgt. Baker _____ resides at 400 Martin Luther King
          (full name of first defendant)                    (address if first defendant)
and is employed as LVMPD Sergeant _____ . This defendant is sued in his/her
      ✓ individual   ✓ official capacity. (Check one or both). Explain how this defendant was
            (defendant's position and title, if any)
acting

under color of law: extorted Plaintiff of Inalienable rights.
_____

29 ) Judge
     Defendant Haffen _____ resides at 200 Lewis Ave.
          (full name of first defendant)                    (address if first defendant)
and is employed as Justice of the Peace. This defendant is sued in his/her
      ✓ individual   ✓ official capacity. (Check one or both). Explain how this defendant was
            (defendant's position and title, if any)
acting

under color of law: Participated in the Conduct of the affairs
of clark county through racketeering activity and
anti-competitive conduct.

2    F

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

30 ) Defendant _____Dobbins_____ resides at _400 Martin Luther King_
(full name of first defendant)                          (address if first defendant)
and is employed as _LVMPD officer_ . This defendant is sued in his/her
√ individual  √ (defendant's position and title, if any)
official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _violated Plaintiff's inalienable rights_
_through robbery and/or extortion (Hobbs/RICO)_ √

31 ) Defendant _____Jeong_____ resides at _400 Martin Luther king_ √
(full name of first defendant)                          (address if first defendant)
and is employed as _LVMPD officer_ . This defendant is sued in his/her
√ individual  √ (defendant's position and title, if any)
official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff's inalienable_
_rights_

32 ) Defendant _____Hutchins_____ resides at _400 Martin Luther king_
(full name of first defendant)                          (address if first defendant)
and is employed as _LVMPD officer_ . This defendant is sued in his/her
√ individual  √ (defendant's position and title, if any)
official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff's inalienable_
_rights_

33 ) Defendant _____Brokaw_____ resides at _400 Martin Luther king_ √
(full name of first defendant)                          (address if first defendant)
and is employed as _LVMPD officer_ . This defendant is sued in his/her
√ individual  √ (defendant's position and title, if any)
official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _extorted Plaintiff's inalienable_
_rights._

2 3/5

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

34 ) Defendant _Chase_____ resides at _400 Martin Luther King_
           (full name of first defendant)                (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
                (defendant's position and title, if any)
    ✓ individual   ✓ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _extorted Plaintiff's inalienable rights._
_____

35 ) Defendant _Lara-Marquez_____ resides _400 Martin Luther King_
           (full name of first defendant)             (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
                (defendant's position and title, if any)
    ✓ individual   ✓ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _extorted Plaintiff's inalienable
rights_
_____

36 ) Defendant _Haynes_____ resides at _400 Martin Luther King_
           (full name of first defendant)             (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
                (defendant's position and title, if any)
    ✓ individual   ✓ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _extorted Plaintiff's inalienable
rights_
_____

37 ) Defendant _Murray_____ resides at _400 Martin Luther King_
           (full name of first defendant)             (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
                (defendant's position and title, if any)
    ✓ individual   ✓ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _extorted Plaintiff of his
inalienable rights._
_____

2

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

38 ) Defendant _Smith_____ resides at _400 Martin Luther King_
        (full name of first defendant)                (address if first defendant)
and is employed as _LVMPD Officer_____ . This defendant is sued in his/her
                (defendant's position and title, if any)
   ✓ individual  ✓ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _extorted Plaintiff of his inalienable_
_rights._

39 ) Defendant _____ resides at _____,
        (full name of first defendant)               (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
               (defendant's position and title, if any)
___ individual ____ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _____
_____

40 ) Defendant _____ resides at _____,
        (full name of first defendant)               (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
               (defendant's position and title, if any)
___ individual ____ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _____
_____

41 ) Defendant _____ resides at _____,
        (full name of first defendant)               (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
               (defendant's position and title, if any)
___ individual ____ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _____
_____

2

**Make a copy of this page to provide the below**
**information if you are naming more than five (5) defendants**

42 ) Defendant _____ resides at _____,
                    (full name of first defendant)                (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
                            (defendant's position and title, if any)
___ individual ____ official capacity. (Check one or both).  Explain how this defendant was acting

under color of law: _____

_____


43 ) Defendant _____ resides at _____,
                    (full name of first defendant)                (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
                            (defendant's position and title, if any)
___ individual ____ official capacity. (Check one or both).  Explain how this defendant was acting

under color of law: _____

_____


44 ) Defendant _____ resides at _____,
                    (full name of first defendant)                (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
                            (defendant's position and title, if any)
___ individual ____ official capacity. (Check one or both).  Explain how this defendant was acting

under color of law: _____

_____


45 ) Defendant _____ resides at _____,
                    (full name of first defendant)                (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
                            (defendant's position and title, if any)
___ individual ____ official capacity. (Check one or both).  Explain how this defendant was acting

under color of law: _____

_____

46) Defendant _____ resides at _____,
           (full name of first defendant)            (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
           (defendant's position and title, if any)
____ individual ____ official capacity. (Check one or both). Explain how this defendant was acting

under color of law: _____
_____

47) Jurisdiction is invoked pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983. If you wish
to assert jurisdiction under different or additional statutes, list them below.

    18 U.S.C. §§ 1951 and 1961-1968 and
    15 U.S.C. §§ 1, 2 and 15

- - - - - - - - - - - - - - - - - - - - - - - - - -

## B. NATURE OF THE CASE

48)    Briefly state the background of your case.

    This case involves LVMPD conducting
the affairs of Clark County through a
pattern of racketeering activity and anti-
competitive conduct; resulting in the extortion
of Plaintiff's inalienable rights; and
retaliation by LVMPD against Plaintiff for
exercising his right to "access the courts."

- - - - - - - - - - - - - - - - - - - - - - - - - -

## C. CAUSE OF ACTION

3

## COUNT I

The following civil rights has been violated: <u>XIV    Amendment</u>
<u>(Due Process; excessive force)</u>

Supporting Facts: [Include all fact you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

49.)   On the 21st day of April, 2016, at approximately 1240 hours, Plaintiff was taken into custody of officers employed by LVMPD and transported to CCDC. Because he was just supposed to do a walk-through, he was quickly taken to the male release area and never afforded the opportunity to eat. This was due to a policy, practice and custom promulgated by LVMPD to show a deliberate indifference to the Constitutional rights of inmates in the male release area.

50.)   At approximately 1700, Plaintiff was notified that he was not being released and taken back to the pre-arrest area. Plaintiff promptly notified Lavender that he had not received anything to eat and that she get him a Kosher tray. Lavender did then and there show a deliberate indifference to the I, VIII and/or the XIV Amendments of the U.S. Constitution; by rolling her eyes, continuing her count and not responding to Plaintiff's request for food.

4

51.) In response to the deliberate indifference shown by Lavender described in paragraph 50, Plaintiff exercised his freedom of speech by yelling at her; "Bitch!!! Fuck you Bitch!!! You aint shit!!!"

52.) In retaliation for Plaintiff engaging in the protected speech described in paragraph 51, and acting upon the orders of Sgt. Leavitt, Does 1-5 did unreasonably retaliate against Plaintiff for exercising his freedom of speech, by placing Plaintiff in one of LVMPD's unconstitutional restraint chairs.

53.) LVMPD's restraint chairs are uncon-stitutional for the following reasons; (a) once strapped in the chair, it is LVMPD policy to keep an inmate two (2) hours; (b) once strapped in the chair, the only part of the body an inmate can move is his/her neck; (c) the chair is designed for an inmate to sit on his/her hands, while officers rountely place the handcuffs on extremely and unnecessarily tight, in order that the cuffs may dig into an inmates skin and cause him/her an unwanton infliction of pain and suffering; (d) the ankle cuffs are designed to apply constant pressure to the top of an inmates' ankles and achilles tendons, while officers are trained

5

to routinely and unnecessarily tight, in order that, they ~~knowing~~ may cause an inmate undue pain and suffering; (e) once in the restraint chair, inmates are strapped by their thighs just above the knee; this not only keeps an inmates knees constantly and continously pressing against one another, but with a male it puts constant pressure and/or squeezing on the testicals from the thighs.

54.) Plaintiff suffered significant discomfort for his first 30 min in the restraint chair. During his second 30 min. in the chair, he was subjected to significant amounts of pain; however, it was after his first full hour in the chair that the pain became almost un-bearable, amounted to toucher and brought him to tears.

55.) It was during this second hour of torture in the chair that Plaintiff begged both Sgt. Peterson and Sgt. Leavitt to let him out of the chair; explaining to him that he was in agonizing pain. However, both Leavitt and Peterson acted with a deliberate indifference to the U.S. Constitution and state law; explaining that; they knew the chair hurt, the chair was designed

6

to hurt, and that Plaintiff could not get out of the chair until he did two (2) hours in it per LVMPD policy.

56.   Plaintiff later apologized to Lavender for cursing at her and asked her to let him out of the chair; explaining that he was in pain. Lavender responded that she knew it (the restraint chair) hurt; but that Plaintiff could not get out of the chair until he had done two (2) hours.

57.   The facts contained in paragraphs 52-56 (torture) caused Plaintiff a great deal of pain, suffering and emotional; and since this incident, there have been times when Plaintiff has had difficulties in getting and maintaing erections; which he did not have problems with before and has caused him a great deal of stress, anxiety and embarrassment. Additionally, there have been times when Plaintiff has ~~had~~ experienced unexplainable pain in his testicals for days at a time since this incident.

\\                                              //
\\                                              //
\\                                              //

7

58.   Plaintiff hereby alleges that the injuries suffered by him described in paragraphs 52-57 were caused pursuant to a policy, practice and/or custom promulgated by LVMPD to place inmates who they deem unruly and/or exercise freedom of speech in it's unconstitutional restraint chair; and LVMPD's failure to properly train its employees.

//                                                        //

//                                                        //

//                                                        //

**COUNT II**

The following civil rights has been violated: XIV Amendment Due Process; denial of food.

Supporting Facts: [Include all fact you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

59. At all times herein Plaintiff's sincerely held religious/spiritual belief that he is to eat a diet consistent with Mosaic law. Therefore, Plaintiff alleges that denying him a kosher tray violated his sincerely held beliefs.

60. Once released from the restraint chair, Plaintiff was not offered any food until breakfast the next day at breakfast; however, the food offered was not kosher, nor was any of the food offered to Plaintiff kosher during the entire 1 - 2 days he was at CCDC.

9

## COUNT III

Violations: I Amendment; Deprivation of the free exercise of religion

### Supporting Facts:

61.  Plaintiff hereby incorporates by reference all the facts contained in paragraphs 49-60; and alleges a deprivation of his I amendment right to free exercise of religion by denying him kosher food.

10

COUNT IV

<u>Violations:</u>  Deliberate Indifference to the I and XIV Amendments (Excessive Force and Food Deprivation)

Supporting Facts:

62. At all times herein, there has been a policy, practice and custom promulgated by LVMPD to show a deliberate indifference to the State and Federal Constitutions; furthermore, upon information and belief, LVMPD has trained it's officers to violate the Constitutions in the discharge of their duties. As a result, officers employed by LVMPD

COUNT **V**

<u>Violations:</u> False Arrest without probable Cause in retaliation for exercising **I** Amendment right to Petition the government for Redress of grievances.(Access to the Courts)

Facts

63. On November 3, 2016, Plaintiff filed an "Emergency Notice of Natural Rights Violations; Common Law Violations; Wellness and Welfare, Commerce, Contracts and Supremacy Clause Violations; Civil Rights Violations; and Sherman, Clayton, Hobbs and RICO Act violations; and Request for Relief (Writ of Mandamus/Prohibition);" in case no. 2:14-cv-00414-APG-PAL.

64. On November 23, 2016, Plaintiff filed a "Motion for Leave to File an Amended Complaint" along with a "Proposed Amended Civil Rights/RICO Complaint Pursuant to 42 U.S.C. §§ 1983 and 1985; and 18 U.S.C. §§ 1961-1968" in case no. 2:14-cv-00414-APG-PAL.

12

65. On December 14, 2016, Plaintiff helped his friend Tiyacte Harris file a Post-Conviction Petition for Writ of Habeas Corpus in both State and Federal Court; preserving Harris' claim of procedural default, where his counsel fell below ADKT 411 standards, resulting in prejudice to his substantial rights.

66. Plaintiff alleges that defendants, Clark County, LVMPD, CCDA's Office and their subordinates knew that Plaintiff helped Tiyacte Harris file the post-conviction petitions made reference to in paragraph 65; based on the language of the petitions. see EJDC case no. C-13-292837-1.

67. On December 14, 2016, Plaintiff filed a "Motion to Withdraw Plea" in Las Vegas Justice Court case no. 16M12317X pursuant to N.R.S. 176.165; alleging that: Officers who were employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130 unlawfully arrested him; violating The Sherman, Clayton, Hobbs and RICO Acts and Art. I sec. 1 of The Nev. Const. in the process; and that his trial counsel was therefore ineffective for failing to file a "Motion to Dismiss" for the same reasons.

13

68. On December 19, 2016, Plaintiff filed a "Motion for Leave to File an Amended Complaint," along with a "Proposed Amended Complaint Pursuant to "42 U.S.C. §1983" in case no. A-14-703251-C.

69. Additionally, on December 6, 2016, Plaintiff filed a "Notice of Appeal" to the U.S. Court of Appeals for the Ninth Circuit from the orders denying the documents refrenced in paragraphs 63 and 64 in case no. 2:14-cv-00414-APG-PAL.

70. Based on the facts contained in paragraphs 63-69 and the fact that Plaintiff was/is a known I amendment activist and litigator, Plaintiff alleges that: High ranking officials employed by Clark County, LVMPD and/or The CCDA's Office conspired to retaliate against Plaintiff for engaging in protected I amendment activities; in furtherance of a plan to obstruct, delay, and chill such activities; and pursuant to a policy, practice and custom promulgated by Clark County, The CCDA's Office and LVMPD to against people known to engage in protected I amendment activity; aimed at chilling such activity.

//
//

14

71.  The facts contained in paragraph 70 led to the injuries and wrongs suffered by Plaintiff described in the balance of this complaint.

72.  Because Plaintiff was aware of the policy, practice and custom promulgated by Clark County, LVMPD and The CCDA's office to conspire to and retaliate against individuals who pursue valid legal claims against them (described above in paragraph 70), Plaintiff had to rush file his "Appellant's Informal Brief" filed in case no. 16-17243 in The U.S. Court of Appeals for the Ninth Circuit; which ultimately led to Plaintiff losing that appeal, as he was unable to he was unable to raise and ~~raise~~ set forth the issues raised in his "Appellant's Optional Reply Brief" in his "Appellant's Informal Brief."

73.  On January 5, 2017, while being employed by LVMPD and conducting the affairs of Clark County, by enforcing a policy, practice and custom promulgated by LVMPD, The County of Clark and The CCDA's office to retaliate against individuals (particularly servants of The Most High) for engaging in protected I amendment activity,

15

aiding and abetting each other, officers Phillips, S. Stephens, J. Ruiz and T. Schaefer, did knowingly and willingly agree to deprive Plaintiff of rights secured by the Constitutions and Laws of The United States of America and The State of Nevada; by falsely arresting Plaintiff without probable cause for allegedly being in violation of the original order out (or stay out order) issued in Las Vegas Justice Court case no. 16M26671X.

74. The arrest mentioned above in paragraph 73 was false and without probable cause; in that, the order out they were allegedly enforcing had exceptions/exemptions for employment and Public Transportation; and Plaintiff was plainly wearing a Taco Bell uniform (employment) and walking toward the bus stop (Public Transportation). Upon Information and belief, Plaintiff alleges that the officers named in paragraph 73 either knew or should have known that the standard exemptions for Order Out are among other things: Employment or residency and Public Transportation. In fact, there was an unknown doe officer on the scene who pointed out to the defendants named in paragraph 73, that Plaintiff looked like he was working (because he was wearing

16

a Taco Bell uniform). However, Defendants choose
to act with a deliberate Indifference to The
IV Amendment of the U.S. Constitution, Art. I sec.
1 of the Nev. Const. and N.R.S. 200.460; by
falsely arresting Plaintiff without probable cause
in retaliation for Plaintiff being a known I
amendment activist.

17

COUNT   VI

Violations: Assault, Battery and Excessive Force used in retaliation for ~~exercising~~ exercising I amendment right to Petition the Government for Redress of grievances (Access the Courts).

Supporting Facts:

75.  Plaintiff hereby incorporates by reference all the facts contained in paragraphs 63 - 74 and alleges that: Defendants named in paragraph 73 did then and there commit assault, battery and use an excessive amount of force in making a false arrest against plaintiff, which resulted in substantial bodily harm; by maliciously twisting Plaintiff's wrist, placing him in a chokehold, slamming him to the ground, twisting him up like a pretzel, placing handcuffs on him extremely and excessively tight and holding him on the freezing cold ground against his will; which caused Plaintiff to have difficulty breathing and the handcuffs to rip his skin.

76.  In response to the facts contained in paragraph 75, Plaintiff demanded of defendants that they "Get your fucking sergeant!!!;" to which defendants retaliated against Plaintiff by

18

charging him with disorderly conduct. Once Sgt. D. Rose arrived on scene, Plaintiff explained to him the facts contained in paragraphs 73-75; however, Sgt. D. Rose Acted with a deliberate indifference to the actions of his subordinates and attempted to justify their actions by stating: "The order out says that you can be employed; not hang out in front of Planet Hollywood." However, Sgt. D. Rose ignored the fact that Plaintiff was not hanging out in front of Planet Hollywood; but walking towards the bus stop when his subordinates began harrassing and falsely arrested Plaintiff.

77.   Once Plaintiff had been forced into the back of defendants' squad car, Sgt. D Rose did knowingly, willingly and maliciously twist Plaintiff's wrist upwards; causing Plaintiff an unecessary amount of pain and discomfort.

78.   The actions of Sgt. D. Rose described above in paragraph 77, were committed pursuant to a policy, practice and custom promulgated by LVMPD to retaliate with physical violence against individuals who pursue valid legal claims against LVMPD by exercising

19

thier right to access the courts and freedom of speech.

COUNT VII

<u>Violations:</u> Deliberate Indifference to pain and suffering

Supporting Facts:

79. Defendant A. Peacock showed a deliberate indifference to Plaintiff's constitutional rights by not readjusting Plaintiff's handcuffs and seating position, when Plaintiff explained to him that he was in pain and discomfort; due to the excessively tight handcuffs and constant pressure on his shoulder.

COUNT VIII

Violations: Malacious Prosecution, ~~and~~ Active Interference with Court Access, and Passive Interference with Court Access

Supporting Facts:

80. While being aware of the false arrest without probable cause described in paragraphs 73-79, an unknown Jane Doe #6 employed as a Deputy District Attorney (DDA) by the CCDA's office, did knowingly and willingly violate Plaintiff's Due Process Rights; by initiating and maintaining a fradulent, malacious and vindictive prosecution against Plaintiff for "Battery on a Protected Person" and/or "Obstructing a Public Officer," when she either knew or should have known that the arresting officers lacked probable cause to arrest Plaintiff; which means that any alleged Obstruction and/or Battery committed by Plaintiff could only have been construed as an attempt by Plaintiff to prevent an unlawful arrest

||
||
||

81. Plaintiff hereby incorporates by ~~reference~~ reference all the facts contained in paragraphs 63-80; and alleges that: The actions of defendants described in paragraphs 73-80 were taken in retaliation litigating case nos. 2:14-cv-00414-APG-PAL in this court, A-14-703251-C in the Eighth Judicial District Court of Clark County, Nevada, 16-17243 in the U.S. Court of Appeals for the Ninth Circuit, helping other individuals exercise their right to access the courts, and for being a known I amendment activist/litigator; in an attempt to injure Plaintiff in his current, pending and future litigation; and pursuant to a policy, practice and custom promulgated by Clark County, LVMPD and the CCDA's Office to retaliate against individuals who exercise their right to "access the courts" by falsely arresting, beating, humiliating and/or initiating fradulent, malicious, vindictive prosecutions against them.

82. The unlawful arrest described in paragraphs 73-81, ultimately caused Plaintiff to lose his job at taco bell; which Plaintiff would have used the wages from to have the defendants in case no A-14-703251-C served pursuant to NRCP 4, ~~reupon~~ and

23

to obtain legal assistance for case no. 16-17243 in the U.S. Court of Appeals for the Ninth Circuit. Furthermore, it caused Plaintiff to be subjected to the unconstitutional conditions at CCDC; and as shown below, once confined at CCDC, Plaintiff was marked for retaliation; merely because he is a Known litigator and I amendment activist.

83. All charges resulting from the unlawful arrest described in paragraphs 73-81 were eventually dismissed by the Clark County District Attorney's Office.

84. Additionally, the Jane Doe DDA was acting on behalf of Clark County rather than the State of Nevada when it initiated and maintained the malacious prosecution described in paragraphs 80-83; because the order out that Plaintiff was alleged to have violated was issued as the result of an alleged violation of Clark County Code 6.04.130 and Plaintiff was only subject to time in the County Jail if he was convicted of the alleged crimes.

## COUNT IX

<u>Violations</u>: Retaliation for Exercising Freedom of Speech and the "right to access the Courts" and Active Interference with Court Access.

Supporting Facts:

85.   On or about the 15th day of January, 2017, while being in custody at CCDC for the False Arrest and Malicious Prosecution Described in paragraphs 73 - 84, Plaintiff was taken out of General Population and placed in the hole by John Doe #7; merely because he told officer Williams that: "I don't give a damn about being placed on lockdown; I'm already in jail."

86.   Once in the hole, Plaintiff was not allowed access to the legal Kiosk because in was not working; and held there until he was released on January 24, 2017.

87.   Plaintiff alleges that the facts contained in paragraphs 85 and 86 were committed in furtherance of a plan to prevent plaintiff from having access to the legal Kiosk; which is the primary source or tool for an inmate confined at CCDC

25

to go to for legal assistance; and are the result of Plaintiff being marked for retaliation for being a known litigator and I amendment activist.

88. Plaintiff alleges that the facts contained in paragraphs 85-87 were committed pursuant to a policy, practice and custom promulgated by LVMPD to retaliate against known litigators and I amendment activist; and in furtherance of a plan to chill Plaintiff's pending and future litigation.

26

## COUNT X

<u>Violations</u>: Denial of Free Exercise of Religion; Deliberate Indifference to the Free Exercise of Religion; ~~and~~ Denial of a Serious Medical Need; and Deliberate Indifference to a Serious Medical Need

## Supporting Facts:

89.   At all times herein, Plaintiff was/is a Servant of the Most High; which means that his sincerely held religious/spiritual beliefs require that he eat only Kosher/Halal foods.

90.   Servants of the Most High have a common belief that the God of Abraham is the Supreme Being in the Universe; weather his/her roots are in Judaism, Christianity or Islam, they believe in the truth of the holy scriptures of all the aforementioned religions.

91.  Plaintiff's dietary practices and beliefs come straight from The Law of Moses (Mosaic Law); aka Torah, and he started to practice these dietary laws over 10 years ago.

27

92.   Plaintiff's dietary religious beliefs require that his foods be at least all-natural; if not certified organic. Additionally, all processed foods should be Kosher/Halal certified and free of GMO's

93.   On January 5, 2017, Plaintiff was booked into CCDC; where he was held until January 24, 2017. Which was the result of the false/unlawful arrest described above in paragraphs 73-84.

94.   Upon being booked into CCDC on January 5, 2017, Plaintiff informed officers on duty that his religious beliefs required a Kosher diet; and requested the same. However, due to the policy, practice and custom promulgated by LVMPD at CCDC to not even consider a request for a special diet by an inmate until he or she is in general population, Plaintiff could not even officially request a Kosher diet until he reached his housing unit.

95.   Upon being classified and housed, Plaintiff submitted a request form to Bonnie Polley; asking to be placed on a Kosher diet. However, Polley denied the request on the ground

28

that she did not recognize Plaintiff's religion.

96.  In response to the denial of his request for a kosher diet referred to in paragraph 95, Plaintiff submitted numerous grievances to Bonnie Polley; explaining to her that the I amendment did not require her to recognize his religion, but only that his religious beliefs be sincerely held.

97.  Despite Plaintiff's efforts described in paragraph 96, Defendant Polley showed a deliberate Indifference to Plaintiff's free exercise of religion by denying him a kosher diet.

98.  The denial of a kosher diet for Plaintiff described above in paragraphs 94-97, was committed pursuant to a policy, practice and custom promulgated by LVMPD to deny religious diets to inmates if they don't get special approval from a rabbi or imam; despite an inmates' sincerely held beliefs and/or another policy, practice and custom promulgated by LVMPD to deny religious diets to inmates such as plaintiff; who are known to file grievances and lawsuits; in order to keep them

29

from operating at their optimum capacity.

99. The policy, practice and custom promulgated by LVMPD described in paragraph 98, results in inmates unnecessarily being denied religious diets; because there is often a waiting list of two-three weeks to attend religious services.

100. On Feburary 28, 2017, after being convicted of violating Clark County Code 6.04.130 and similar/related provisions of the Clark County Code (CCC), Plaintiff was booked into CCDC; where he was held until July 6, 2017. Upon his initial medical screening, Plaintiff informed medical staff that he would not eat until they placed him on a Kosher diet.

101. Much like in paragraph 94, Plaintiff informed officers on duty that his sincerely held religious beliefs required a Kosher diet; and requested and requested the same. However, once again pursuant to the policy, practice and custom promulgated by LVMPD to not even consider a religious diet request by an inmate until he/she is housed; Plaintiff could not even formally request a Kosher diet until

30

he reached his housing unit.

102.   Rather than issue an emergency order to place plaintiff on a kosher diet when he informed medical personnel that he would not eat until they did so, CCDC medical staff showed a deliberate indifference to Plaintiffs' serious medical need of nutrition and attempted to chill his religious activity; by threatening to put him in the psych ward if he did not eat the non-kosher food; which violated his sincerely held religious beliefs.

103.   On March 1, 2017, immediately upon being placed in general population, Plaintiff put in a request to Bonnie Polley to be placed on a kosher diet of organic/non-GMO foods; explaining that his sincerely held religious/spiritual beliefs required him to eat such; and that he would not eat until she placed him on a kosher diet.

104.   Defendant Polley acted with a deliberate indifference to Plaintiff's serious medical need of nutrition and his free exercise of religion; by not granting Plaintiff's request

31

for a kosher diet referred to in paragraph 103; and responding with: "I am not familiar with Servant of The Most High — — Is there someone I can contact?"

105. Plaintiff responded to defendant Polley's denial of his request for a kosher diet referred to in paragraph 104; by sending her another Request/Grievance, explaing to her that a Servant of The Most High (Almighty God). Further, Plaintiff informed defendant Polley that if she would like to understand what a Servant of The Most High is and how he/she conducts him or herself, that she could refer to the Torah, Bible and Quran and/or talk to a competent Rabbi or Imam. Additionally, Plaintiff once again informed defendant Polley that he would not eat until she placed him on a Kosher diet.

106. Defendant Polley acted with a deliberate indifference to Plaintiff's serious medical need of nutrition and his free exercise of religion; by denying his Request/Grievance referred to in paragraph 105; responding with: "... I really am confused..., the last special diet you were on was a Halal

32

Tray which says you were Muslim. — I am unable to approve another special tray."

107. On March 7, 2017, Plaintiff responded to Defendant Polley's latest denial of his request for a Kosher diet referred to in paragraph 106; by sending her another Request/Grievance explaining to her that, in the past Plaintiff has identified himself as a Christian, Muslim, Messianic-Muslim, and even Jewish; that he has never waivered in his belief that the God of Abraham is the Supreme Being in the Universe; and that his spiritual/religious beliefs/doctrine come straight from the Torah, Bible and Quran. Additionally, Plaintiff informed defendant Polley that he no longer chooses to place a religious marker on himself; and identifies only as a Servant of the Most High(God of Abraham). Finally, Plaintiff informed Ms. Polley that it is his understanding that Kosher and Halal dietary laws are the same; that it was his sincerely held belief to eat Kosher which he has practiced for over 10 years; and requested to be put on the Kosher list ASAP.

33

108.  On March 13, 2017, John/Jane Doe #8 responded to Plaintiff's Request/Grievance referred to in paragraph 107; which stated: "You have to be interviewed by either an imam or rabbi to decide if you receive Kosher/halal." And asking: "Would you like to be interviewed for a religious diet?" Eventually, Plaintiff submitted a religious diet request form to Bonnie Polley.

109.  On March 18, 2017, without ever being interviewed by an Imam or Rabbi, Plaintiff started to receive what CCDC classifies as a Kosher/Halal tray. However, upon information and belief, the only items on the CCDC menu that are truly Kosher/Halal is the milk, which is served with breakfast; and the Lipton Tea, which is served with lunch and dinner. As shown below, Plaintiff received this non-kosher diet until he was released from CCDC on July 6, 2017.

110.  Plaintiff alleges that the orange he received on virtually every breakfast tray was not Kosher/halal; in that, they were genetically modified oranges that had no seed.

111.   Plaintiff alleges that the Cheerios he received on virtually every breakfast tray were not Kosher/halal; because they were cross-contaminated with genetically modified materials at General Mills. Further, when Plaintiff didn't receive Cheerios on his breakfast tray, he received Chex; which is not Kosher/halal because it is actually produced with genetic engineering.

112.   Upon information and belief, the bread that Plaintiff received on nearly every breakfast tray was not Kosher/halal; because it was a processed item that was not Kosher/halal certified and at least partially produced with genetic engineering.

113.   Upon information and belief, Plaintiff alleges that the items he received on his lunch and dinner trays were not Kosher/Halal; and merely the same things that Aramark fed to other inmates without seasoning.

114.   Upon information and belief, Aramark attempts to justify serving non-kosher/halal foods to inmates confined at CCDC by preparing and cooling them separately; in an attempt to cheaply increase their profits.

115.   Plaintiff submitted Grievance/Request forms to Bonnie Polley and Aramark outlining the discrepancies in the Kosher/halal trays referred to in paragraphs 110-113; however, Defendant Peggy L.N.U. acted with a deliberate indifference to Plaintiff's free exercise of religion and his serious medical need of nutrition by failing to remedy the situation.

116.   On or about the 9th day May 2017, Plaintiff sent a Request/Grievance to Sheriff Joe Lombardo outlining most of the issues contained in paragraphs 93-116; however, Defendant Lombardo acted with a deliberate indifference to Plaintiff's serious medical need of nutrition and his free exercise of religion by failing to remedy the situation.

117.   At all times herein, Defendants either knew or should have Known that it was/is Plaintiff's sincerely held religious belief to eat only Kosher/halal foods; as Plaintiff is in records held by LVMPD at CCDC, to have received a Halal diet as recently as July of 2014.

118.   At all times herein, there was a policy, practice and custom promulgated by LVMPD to show a deliberate indifference to the Constitutions and Laws of The United States of America and The State of Nevada; as a result, LVMPD Officers and employees feel empowered to ignore their oaths of office and violate the law.

119.   Not only are the wrongs described above and in the balance of this complaint pursuant to a policy, practice and/or custom promulgated by LVMPD; but also due to LVMPD's failure to properly train its' employees on constitutional law.

## COUNT XI

<u>Violations</u>: Retaliation for filing a Grievance

### Supporting Facts:

120.    Shortly after Plaintiff filed the grievance referred to in paragraph 116, he began to receive rotten oranges on his breakfast tray regularly. Additionally, Plaintiff began to receive smaller portions on his lunch and dinner trays.

121.    Upon information and belief, Once defendant Lombardo recieved the grievance from Plaintiff referred to in paragraph 116, he ordered his subordinates at Aramark and/or CCDC to retaliate against Plaintiff; by giving him rotten oranges and smaller portions of food.

122.    Therefore, Plaintiff hereby alleges that the facts contained in paragraph 120, were comitted in retaliation for Plaintiff sending the Grievance referred to in paragraph to Sheriff Lombardo; and pursuant to the order given by Lombardo described in paragraph 121.

38

123.   The order given by Lombardo described in paragraph 121, was given pursuant to a policy, practice and custom promulgated by LVMPD to retaliate against individuals who engage in protected I amendment speech activity.

COUNT XII

<u>Violations</u>: Retaliation for filing lawsuits/grievances and Unlawful detainment.

Supporting Facts:

124.    On June 25, 2016, Plaintiff was walking through the Meadows Mall, when he noticed defendant Officer D. Hamm; who Plaintiff recognized as a corrections officer employed by LVMPD at CCDC. Plaintiff nodded his head at defendant Hamm and went about his way.

125.    Upon information and belief, defendant Hamm did then and there misuse a 911 call and lie to an emeregency operator; by alleging that Plaintiff was escaped from jail/prison and walking through the Meadows Mall, when he knew those allegations were not true.

126.    Plaintiff alleges that the allegations contained in paragraph 125 were committed pursuant to a policy, practice and custom promulgated by LVMPD to retaliate against individuals for filing lawsuits against them; and in an attempt to intimidate Plaintiff from continuing to pursue and litigate case no: 2:14-cv-00414-APC-PAL.

40

127.   Shortly after seeing defendant Hamm and as a result of the facts and allegations contained in paragraphs 125-126, Officers Jane/John Does 9-13 of LVMPD had surrounded Plaintiff inside of Quick fix, falsely detained him and refused to let him go until he provided them with ID. Eventually, after some heated exchanges with Does 9-13 and some prompting from his friends, Plaintiff provided the officers with ID so he could move on with his day

128.   Once Plaintiff provided Does 9-13 with ID, they admitted that Plaintiff looked nothing like the alleged suspect; and explained to Plaintiff that they received a call that someone had escaped from jail/prison and was walking through the mall. These officers had told Plaintiff he was free to go; however, they refused to let Plaintiff go when he asked if them stopping him had anything to do with the C.O. (Corrections Officer) that was in the mall.

41

129. Once Plaintiff asked if the stop had anything to do with the C.O., does 9-13 handcuffed Plaintiff, became defensive and started to question plaintiff about how he knew that a C.O. called them and refused to allow Plaintiff to leave until they did a records check on him.

130. Plaintiff alleges that the facts contained in paragraph 129 were committed to chill any grievance and/or litigation that Plaintiff may pursue against Defendant Hamm; and pursuant to a policy, practice and custom promulgated by LVMPD to harass and retaliate against individuals who pursue or show signs that they may pursue litigation against LVMPD and it's employees.

42

COUNT XIII

Violations: Conspiracy to violate 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art 1 § 1 of the Nev. Const; Art. 1 § 8 cl. 3, Art VI cl. 2 and the I, IV, IX and XIV amendments of the U.S. Const.

Supporting Facts:

131. On _____, 2015, Plaintiff filed an amended complaint in case no. 2:14-cv-00414-APG-PAL; which sought to bring claims against the enterprise of Clark County; including not only Clark County, but also LVMPD, the Clark County District Attorney's Office, the Clark County Public Defenders and subordinates/employees of all the aforementioned entities for violating the Sherman, Clayton, Hobbs and RICO Acts, Inalienable rights violations and a host of other civil rights violations.

132. In response to the facts above in paragraph 131, and because they knew Plaintiff was very close to stating valid claims against them for violating Anti-trust law, the RICO Act and his inalienable rights, Steve Sisolak conspired with his cohorts/subordinates to increase the County's racketeering activity and anti-competitive conduct; by planning to implement the civil diversion program.

133. The civil diversion program talked about in paragraph 132, would invest proceeds of the County of Clark; which were derived from a pattern of racketeering activity back into the county; in the form of paying overtime to LVMPD Officers soley to conduct the affairs of Clark County; to commit "robbery," "kidnapping," and "extortion" of individuals who engage in ordinary, beneficial, economicl commercial avocations, and by converting a warehouse owned by the Count which cannot be described as anything other than an administerial Kangaroo Court; where administrators masquerading as judges aid and abet the County of Clark in the conduct of it's affairs through a pattern of racketeering and anti-competitive conduct; extorting individuals of their rights and property by giving them the option of admitting civil liability and forfitting all money, property and constitutional rights associated with trial or be kidnapped and held for ransome by LVMPD at CCDC.

134. Upon information and belief, Steve Sisolak delegated the task of implementing/planning the Civil Diversion Program to Captain Christopher Tomaino of LVMPD and Assistant County Manager Jeff Wells; who were to hashout the details of the aforementione Civil Diverson Program.

44

135. The facts contained in paragraphs 132 - 134 were committed in furtherance of a plan to obstruct and chill and/or retaliate against Plaintiff for litigating case no. 2:14-cv-00414-APG-PAL and to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same.

136. The conspiracy described in paragraphs 131-135, resulted in the injuries suffered by Plaintiff described in the balance of this complaint.

137. Additionally, if not for the facts contained in paragraphs 131-135, Plaintiff would have been able to exercise his inalienable right to engage in ordinary, beneficial avocations; and hire an attorney to assist him in prosecuting case no 2:14-cv-00414-APG-PAL.

45

## COUNT XIV

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. 1 § 1 of the Nev. Const; Art. 1 § 8 cl. 3, Art. VI Cl. 2 and the I, IV, IX and XIV amendments of the U.S. Const.

### Supporting Facts:

138.   At all times herein Chapter 6 of the Clark County Code (CCC) makes a suspect classification in its legislative scheme; by ~~making a suspect~~ ~~class of~~ discriminating against natural persons in favor of artificial persons.

139.   At all times herein, the stated legislative purpose of CCC 6.04.130 is "to prevent business from being done on the public right of way" see CCO 4042.

140.   On or about the 9th day of September, 2015, while being employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130, officers Bromley and John Doe #14, aiding and abetting each other, did knowingly and willingly agree to obstruct, delay and affect "commerce" within the meaning of 18 U.S.C. § 1951(b)(3); by "falsely detaining/citing" Plaintiff for allegedly being engaged in the ordinary, beneficial, economic/commercial avocation of providing bottled water which was purchased from

46

an international corporation and derived from sources outside the state, to thirsty tourist from outside the state and country at a competitive price.

141. Defendants did then and there commit "robbery", within the meaning of N.R.S. 200.380 and the Hobbs Act and an unreasonable seizure by impounding Plaintiff's cooler from within his presence, without his consent, and under color of official right.

142. Defendants committed the crimes above described in paragraphs 140-141, in furtherance of a plan to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same. Additionally, the facts described in paragraphs 140-141 amount to "extortion", within the meaning of the Hobbs Act; because the officers did transfer Plaintiff's ability to engage in an ordinary beneficial avocation to casinos and other corporations along the Las Vegas strip; accepting their salaries and positions as county employees along with the prospect of advancing within the enterprise of Clark County as consideration for violating their duty to uphold the law.

143. LVMPD and Joe Lombardo are liable for the wrongs described in paragraphs 140 - 142; because they have ordered their subordinates to commit these violations and failed to ~~be~~ properly train their employees on constitutional law.

COUNT XV

Violations: 15 U.S.C. §§1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art 1 §1 of the Nev. Const; Art 1 § 8 cl. 3, Art. VI cl. 2 and the I, IV, IX and XIV Amendments of the U.S. Const.

Supporting Facts:

144.   At all times herein, Plaintiff was the possessor of a valid food handler saffey card from the Southern Nevada Health District.

145.   On or about the 12th day of September, 2015, at about 10:00 am, within the unincorporated area of Clark County, while being employed by LVMPD and conducting the affairs of Clark County through the attempted enforcement of CCC 6.04.130; Sgt. Cox did knowingly and willingly obstruct, delay and affect "commerce," and the movements of articles and commodities in "commerce," by "extortion," that is Cox did wrongfully obtain control over Plaintiff's ability to engage in the ordinary, beneficial, economic/commercial avocation of providing bottled water that was purchased from an international corporation and derived from sources outside the state to thirsty tourist from outside the state and country at a competitive price; and transfer said ability to casinos and other corporations along the las vegas strip, in

49

furtherance of a plan to aid and abet said casinos and corporations in monopolizing the exchange of money along the las Vegas strip; By "falsely arresting" ~~Plaintiff~~ Plaintiff merely because he was walking with a cooler and known to sell water on the Las Vegas strip.

146. Sgt. Cox did then and there commit "extortion" and "coercion" within the meaning of N.R.S. 207.190; by falsely issuing Plaintiff a misdemeanor warning and threatening to take all of Plaintiff's money and property if he saw him again. Sgt. Cox then showed the county's intent of economic protectionism for casinos and corporations along the Las Vegas strip by telling Plaintiff that if he sold water by the Convention Center that no one would care.

147. Sgt. Cox took the actions described in paragraphs 145-146 pursuant to CCC 6.04.130; a policy, practice and custom promulgated by LVMPD to harass people who walk with coolers and are known to sell bottled water on the LV strip and in furtherance of a plan to aid and abet casinos and other corporations on the Las Vegas strip in monopolizing the exchange of money along the same.

148.   If not for the actions of Defendant Cox described in paragraphs 145-147, Plaintiff would have engaged in the ordinary, beneficial, economic/commercial avocation of selling bottled water which was purchased from an International Corporation and derived from sources in the State of California to thirsty tourist from outside the state and country at the competitive price of $1.00; generated at least $250.00 - $300.00 from said avocation; deposited the proceeds into his U.S. Bank Account which has interstate branches and is open to customers outside the state; and engaged in the aforementioned avocation indefinitely.

149.   The burden placed on interstate and foreign commerce by Sgt. Cox through the enforcement of CCC 6.04.130 described above in paragraphs 145-148 was excessive and unreasonable because its purpose was not public saftey but rather economic protectionism; resulting in the obtaining of wrongful control over Plaintiff's inalienable rights.

51

COUNT XVI

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art I §1 of the Nev. Const; Art. 1 § 8 cl. 3, Art. VI cl 2 and the I, IV, IX and XIV amendments of the U.S. Constitution.

Supporting Facts.

150.    On October 1, 2015, while being employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130, at approximately 11:00 am, aiding and abetting each other, Defendants Cipriano and Doe #15 did knowingly and willingly agree to obstruct, delay and affect "commerce," and the movements of articles and commidities in "commerce," by "extortion," that is, defendants did unreasonably and falsely arrest for having a cooler and being known to sell bottled water on the Las Vegas strip; thereby obtaing the wrongful control over Plaintiff's ability to engage in the ordinary, beneficial avocation of providing bottled water that was purchased from an international corporation and derived from sources outside the state to thirsty tourist from outside the state and country (inalienable rights) and transfering said ability to casinos and corporations on the Las Vegas strip, in furtherance of a plan to aid and abet said casinos in monopolizing the exchange along the same; accepting their salaries

52

and positions as County employees, along with the prospect of advancing within the enterprise of Clark County as consideration for violating their duty to uphold the law.

151. Defendants did then and there commit "robbery," by taking $74.00 and a cooler filled with about 60 bottles of Nestle purelife water from within Plaintiff's presence, without his consent

152. Sgt. Doe #16 did then and there aid and abet in "kidnapping" Plaintiff within the meaning of N.R.S. 200.310, by transporting him to be held at CCDC.

153. If not for the "kidnapping," "robbery," and "extortion" described above in paragraphs 150-152, Plaintiff would have generated at least $200.00 more from the ordinary, beneficial avocation described above in paragraph 150, spent at least $20.00 on ice from enterprises like Wal-Greens and CVS, spent at least $15-20 on food from restraunts such as Earl of Sandwich and Chipotle; and finally deposited the proceeds of his labor into his U.S. Bank Account to engage in the ordinary, beneficial avocation described above indefinately.

154. Defendants committed the wrongs described in paragraphs 150-153 pursuant to a policy, practice and custom promulgated by LVMPD to harass people on the Las Vegas strip who have coolers and are known to sell water on it, CCC 6.04.130; in retaliation for Plaintiff filing case nos A-14-703251-C and 2:14-cv-00414-APG-PAL; and in furtherance of a plan to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same

155. The burden that Defendants placed on interstate/foreign commerce described in paragraphs 150-154 was/is excessive; and unreasonable; because their actions amount to economic protectionism and are not taken to enhance public saftey.

156. Plaintiff was later acquitted at trial on a directed verdict for the charges stemming from the facts contained in paragraphs 150-155; where Cipriano admitted that he did not witness Plaintiff actually make a sale or propose to make a sale.

COUNT XVII

Violations: 15 U.S.C. §§1,2 and 15; 18 U.S.C. §§1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; N.R.S. 200.460 (NV Common Law); Art 1 § 1 of the Nev. Const; Art. 1 § 8 cl. 3, Art. VI Cl. 2 and the I, IV, IX and XIV of the U.S. Const:

## Supporting Facts:

157. On the 13th day of February, 2016, between the hours of 10:55 am and 11:15 am, within the unincorporated area of Clark County, Defendants Vargas and Banez, aiding and abetting each other, while being employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130, did knowingly and willingly agree to obstruct, delay and affect "commerce" and the articles and commodoties in "commerce" by "extortion", that is defendants did wrongfully obtain control of Plaintiff's ability to engage in the ordinary, beneficial, economic/commercial avocation of providing bottled water that was purchased from an international corporation and derived from sources outside the state to thirsty tourist from outside the state and country at a competitive price; and transfer said ability to Casinos and other corporations along the las Vegas strip; by falsely arresting Plaintiff because he was in possession

55

of a cooler and known to sell bottled water on the Las Vegas strip.

158.   Defendants did then and there commit "robbery" by taking a cooler filled with about 40 bottles of Nestle Purelife water from within Plaintiff's presence, without his consent.

159.   Defendants did then and there commit "kidnapping" by moving Plaintiff about 40 yards and down an elevator and placing him in the back of an LVMPD van to be transported to CCDC.

160.   If not for Defendants' actions described in paragraphs 157-159, Plaintiff would have generated at least $200.00 in revenue from the ordinary, beneficial avocation described in paragraph 157, deposited the proceeds of his labor into his U.S. Bank Account and engaged in the ordinary, beneficial avocation indefinately.

161.   Defendants committed their actions described in paragraphs 157-160 pursuant to a policy, practice and custom promulgated by LVMPD to harass people on the Las Vegas strip who have coolers;

56

and in furtherance of a plan to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same.

162. Additionally, because defendants temporarily detained a mexican individual who was also known to sell bottled water on the Las Vegas strip at the same time that they detained Plaintiff, but they decided to let that individual go with a warning instead of taking him to jail as they did to Plaintiff; Plaintiff alleges that defendants took their actions described in paragraphs 157-161 in retaliation for Plaintiff litigating case nos. 2:14-cv-00414-APG-PAL and A-14-703251-C and/or with a racial animus.

163. The charges arising out of the incident described in paragraphs 157-162 were eventually dismissed.

COUNT XVIII

Violations: 15 U.S.C. §§ 1, 2 and 15; 16 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; N.R.S. 200.460 (NV Common Law); Art 1 §1 of the Nev. Const; Art. 1 §8 cl.3, Art. VI cl. 2, and the I, IV, IX and XIV amendments of the U.S. Const.

## Supporting Facts:

164.   On the 17th day of February, 2016, within the unincorporated area of Clark County, between the hours of 1500 and 1700; while being employed by LVMPD, conducting the affairs of Clark County through the enforcement of CCC 6.04.130 and acting upon direct orders from Sgt. Cox; aiding and abetting each other, Bill and Schaffer did knowingly and willingly agree to artificially reduce the supply of bottled water on the Las Vegas strip; by obstructing, delaying and affecting "commerce", and the movements of articles and commodities in "commerce"; by "extortion" and "false arrest", that is, defendants did arrest Plaintiff merely for walking with a cooler and being known to sell water on the Las Vegas strip; thereby wrongfully obtaining control over Plaintiff's ability to engage in the ordinary, beneficial avocation of providing bottled water that was purchased from an International corporation and derived from sources outside

58

the state to thirsty tourist from outside the state and country at a convient loc- ation and a competitive price; and transfer said ability to casinos and other corporations along the Las Vegas strip; accepting their salaries and positions as County employees along with the prospect of advancing within the enterprise of Clark County as consid- eration for violating their duty to uphold the law.

165. Defendants did then and there commit "robbery;" by taking a cooler filled with approx. 60 bottles of water from within Plaintiff's presence, without his consent; and "Kidnapping;" by placing Plaintiff in the back of an LVMPD van to be transported to CCDC.

166. If not for the actions of defendants described in paragraphs 164-165; Plaintiff would have generated at least $170 from the ordinary, beneficial avocation of selling water to tourist from outside the state and country at a com- petitive price, deposited the proceeds of his labor into his U.S. Bank Account; where it would have been used to purchase more goods and ser- vices in interstate commerce, so that Plaintiff

could engage in the aforementioned avocation indefinately.

167. Defendants committed their actions contained in paragraphs 164-166 pursuant to CCC 6.04.130; a policy, practice and custom promulgated by LVMPD to harrass and arrest people who have coolers and are known to sell bottled water; in retaliation for Plaintiff litigating case nos. 2:14-cv-00414-APG-PAL, A-14-703251-C and other Justice Court cases; and in furtherance of a plan to aid and abet the casinos on the Las Vegas strip in mono-polizing the exchange of money along the same; thereby making the burden that defendants placed on interstate "commerce" excessive and unreasonable.

168. Plaintiff was found not guilty at trial for the charges stemming from the arrest described in paragraphs 164-165; where defendant Schaffer admitted that he never saw Plaintiff actually make a sale or propose to make a sale.

COUNT IXX

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; N.R.S. 200.460 (NV Common Law); Art I §1 of the Nev. Const; Art I § 8 cl. 3, Art. VI Cl. 2 and the I, IV, IX and XIV amendments of the U.S. Const.

Supporting Facts:

169. On the 21st day of April, 2016, between the hours of 1240 and 1250, within the un-incorporated area of Clark County, while being employed by LVMPD, and Conducting the affairs of Clark County by enforcing CCC 6.04.130, aiding and abetting each other, Garris and Cipriano, did knowingly and willingly agree to artifically reduce the supply of bottled water on the Las Vegas strip; by obstructing, delaying and affecting "commerce" and the movements of articles and commodities in "commerce"; by "extortion" and "false arrest"; that is Garris did arrest Plaintiff for having a cooler and being known to sell water on the Las Vegas strip; thereby obtaining the wrongful control over Plaintiff's ability to engage in the harmless, ordinary, beneficial avocation of providing thirsty tourist from outside the state and country with bottled water that was purchased from an international corporation

61

and derived from sources outside the state
at a competitive price; thereby transfering said
ability to casinos and other corporations along
the Las Vegas strip, accepting their salaries
and positions as county employees as consider-
ation for violating their duty to uphold the
law.

170. Additionally, Garris also interfered with
Plaintiff's pursuit of happiness; because the woman
that Plaintiff was talking to refused to give
him her number; as a direct result of
~~XX~~ Garris ~~XXXXXXX~~ placing Plaintiff in hand-
cuffs for no reason.

171. Cipriano did then and there commit
"robbery; by taking a cooler filled with approx.
40 bottles of water from within Plaintiff's
presence, without his consent and "under color
of official right."

172. Defendants did then and there commit
"kidnapping; by placing Plaintiff in the back of
an LVMPD vehicle to be transported to CCDC.
||
||
||

173.    Defendants committed their actions pursuant to CCC 6.04.130; a policy, practice and custom promulgated by LVMPD to harass people who have coolers on the Las Vegas strip; in retaliation for plaintiff litigating case nos. 2:14-cv-00414-APE-PAL, A-14-703251-C and getting the case dismissed that resulted from Plaintiff's arrest by Cipriano on 10/1/15 (see paragraphs 150-156); and in furtherance of a plan to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same.

174.    If not for the False Arrest described above in paragraphs 169-173, Plaintiff would not have been subjected to the wrongs described in paragraphs 49-62 of this complaint; and he would have likely generated at least $250 - $350 from the ordinary, beneficial avocation described above, deposited the proceeds into his U.S. Bank Account and engaged in the aforementioned avocation indefinately.

63

COUNT XX

Violations: 15 U.S.C. §§1, 2 and 15; 18 U.S.C. §§1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art I §1 of the Nev. Const; Art I § 8 cl. 3, Art VI cl. 2 and the I, IV, IX and XIV amendments of the U.S. Constitution

Supporting Facts:

175.   On the 23rd day of June, 2016 Plaintiff made Special Visitation to the Las Vegas Justice Court before Pro Tempore Judge Holly Stoberski in case numbers: 15M24270X and 15M25500X; Plaintiff informed Stoberski that his Counsel had performed deficiently; and that he wished to Dismiss his Counsel and withdraw his Plea. Because Plaintiff wished to exercise his right to access the Courts, Stoberski, at the request of the Clark County District Attorney remanded Plaintiff into custody; and refused to allow Plaintiff to attend his other court dates. (Case Nos.: 16M12499X, 16M13051X and 16M13055X); causing bench warrants to be issued for Plaintiff's arrest. Defendant Stoberski then doubled Plaintiff's bail from $2,000 to $4,000 merely because she saw that Plaintiff had several open cases for engaging in the beneficial,

64

ordinary avocation of providing bottled water, to thirsty people in the middle of a desert at a competive price; apparently taking Judicial Notice; that Plaintiff is an individual who is customarily engaged in interstate and foreign commerce.

176.   Upon information and belief, Stoberski accepted her salary as a Pro Tempore Judge and the prospect of becoming permanent Justice of the Peace in the Las Vegas Justice Court; as consideration for violating her duty to uphold the law.

177.   Furthermore, If not for Stoberski's actions, Plaintiff would have been able to seek help from competent paralegals and/or attorney's to help him bring the claims he now brings in this complaint.

COUNT   XXI

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. 1 § 1 of the Nev. Const; Art. 1 § 8 cl. 3, Art. VI cl. 2 and the I, IV, IX and XIV amendments of the U.S. Const.

Supporting Facts:

178.   On the 1st day of July, 2016, around the hour of 1750, within the County of Clark, white being employed by LVMPD and Conducting the Affairs of Clark County through the enforcement of CCC 6.04.130; Sgt. Cox and Sgt. Baker, aiding and abetting each other, did knowingly and willingly agree to artificially reduce the supply of bottled water along the Las Vegas Strip; by obstructing, delaying and affecting "commerce," and the movements of articles and commodities in "commerce," by "extortion" and "false arrest"; that is, defendants did arrest Plaintiff for simply having a cooler with bottled water inside, and being known to sell bottled water on the LV Strip; even though, they did not witness Plaintiff make a sale or propose to make a sale; thereby wrongfully obtaining control over Plaintiff's ability to engage in the harmless, ordinary, beneficial, economic/commercial avocation of providing bottled water to thirsty

66

tourist from outside the state and country, at a competitive price.

179.   Defendants did then and there commit "robbery" by taking money and a cooler from within Plaintiff's presence, without his consent and under color of official right.

180.   Defendants did then and there commit "kidnapping" by placing Plaintiff in the back of an LVMPD van to be transported to CCDC, against his will.

181.   Defendant Garris, knowing about the actions of Cox and Baker described above in paragraphs 178-180, and in an attempt to aid and abet the same crimes, did then and there commit "fraud" and "perjury" by attesting to the fact that Plaintiff violated CCC 6.04.130 and CCC 6.56.030; eventhough Garris had not witnessed the allegations made by Sgt. Cox and Sgt. Baker.

182.   If not for Defendants actions, Plaintiff would have generated at least $200.00 from providing bottled water to thirsty tourist from outside the state and country at a competitive price; deposited the proceeds into his U.S. Bank Account; and

67

Continued to engage in interstate and foreign commerce indefinately.

183.   Defendants committed the actions described above in paragraphs 178-182 pursuant to CCC 6.04.130 and 6.56.030, a policy, practice and custom promulgated by LVMPD to arrest people who have coolers and are known to sell water on the LV strip, in retaliation for Plaintiff exercising his right to access the Courts by litigating Case Nos A-14-703251-C and 2:14-cv-00414-APG-PAL and in furtherance of a plan to aid and abet casinos on the LV strip in monopolizing the ~~O~~ exchange of money along the same.

184.   The CCDA declined to pursue charges against Plaintiff for the facts described in paragraph 178-183; and if not for said actions, Plaintiff would have been able to obtain competent legal assistance to help him bring the claims he now brings in this complaint.

COUNT XXII

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. I § 1 of the Nev. Const; Art. 1 § 8 cl. 3, Art. VI Cl. 2 and the I, IV, IX and XIV Amendments of the U.S. Const.

Supporting Facts:

185.   On the 13th day of July, 2016, Plaintiff filed a "MOTION TO DISMISS AND STRIKE THE UNDERLYING STATUTE AS UNCONSTITUTIONAL and a MOTION TO QUASH BENCH WARRANT in Justice Court Case No: 16M14714X; however, Judge Conrad Haffen, on the 14th day of July, 2016, in furtherance of a plan to obstruct, delay and affect "commerce," and the movements of articles and commodities in "commerce," by artificially reducing the supply of bottled water on the Las Vegas strip and to deny Plaintiff his right to access the courts; did remand Plaintiff into custody on the above mentioned case number and appoint the Public Defender against his will and without his consent.

186.   Upon information and belief, Judge Haffen did alert the other Justices of the Peace about the motions filed by Plaintiff described in paragraph 185; and solicited them to remand Plaintiff into custody

69

on cases that he had pending before them.

187. The facts described in paragraph 186 were committed in furtherance of a plan to deplete plaintiff's resources by forcing him to bail out on invalid charges against him and/or to prevent Plaintiff from engaging in the harmless, ordinary, beneficial, economic/commercial avocation of providing bottled water to thirsty tourist from outside the state and country; at a competitive price.

188. The facts and conspiracy described above in paragraphs 185-187 placed an even more sub-stantial burden on interstate and foreign commerce; because the water Plaintiff would have sold would have been purchased from an international corporation and derived from sources outside the state; and the proceeds of his labor would have been deposited into his U.S. Bank Account. Additionally, the actions described in this Count resulted in denying Plaintiff "access to the Courts" by keeping Plaintiff away from his legal work and confined in a jail with an inadequate law library/legal assistance that would not provide him with supplies to draft documents; resulting in "extortion" of Plaintiff's inalienable rights and his right to "access the courts"

70

189.   On the 27th day of July, 2016, while conducting the affairs of Clark County and acting pursuant to a conspiracy to prevent Plaintiff from engaging in interstate and foreign commerce and accessing the Courts; Judge Eric Goodman, did remand Plaintiff into custody and appoint the Public Defender to Plaintiff against his will and without his consent; resulting in "extortion" of Plaintiff's inalienable rights and his right to access the Courts; knowing of the policy, practice and custom, promulgated by the Clark County Public Defenders' Office to fall below ADKT 411 Standards.

190.   Because of the actions of Judge Haffen and Judge Goodman, described above in paragraphs 185-189, Plaintiff was unable to file Petitions for Writs of Habeas Corpus in Justice Court case nos. 16M14714X and 16M09821X; produce any meaningful research and/or documents in case nos. A-14-703251-C and 2:14-cv-00414-APG-PAL or work on his Appeal from the denial of a Writ of Coram Nobis/Habeas Corpus that was pending in the NV Supreme Court. Further, because defendants actions resulted in Plaintiff being confined at CCDC for 25 days; he was prevented from exercising his inalienable right to provide bottled water which was purchased from an inter-

71

national corporation and derived from sources outside the state, to thirsty tourist from outside the state and country at a competitive price.

191. If not for defendants actions (described in paragraphs 185-190), Plaintiff would have generated between $9000.00 to $13,000.00 from the ordinary, beneficial avocation of selling bottled water to thirsty tourist from outside the state and country and obtained the assistance of competent legal assistants, paralegals and/or attorney's in litigating case nos: 2:14-cv-00414-APG-PAL and A-14-703251-C.

192. Defendants committed their actions pursuant to CCC 6.04.130; a policy, practice and/or custom promulgated by Judicial Officers employed at the Regional Justice Center to obstruct court access by Pro Se litigants; and in furtherance of a plan to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same.

193. Additionally, the combination of Judge Goodman and Hafen's intimidation, along with the inadequate law library provided at CCDC chilled Plaintiff in litigating case no. 2:14-cv-00414-APG-PAL

72

COUNT <u>XXIII</u>

<u>Violations:</u> 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. I § 1 of the Nev. Const; Art 1 § 8 cl. 3, Art. VI Cl. 2 and the I, IV, IX and XIV Amendments of the U.S. Const.

<u>Supporting Facts:</u>

194.   On the 17th day of September, 2016, between the hours of 1800 and 1845, within the unincorporated area of Clark County, Officers Dobbins, Jeong, Hutchins and Jane Doe # 17; did knowingly and willingly agree to artificially reduce the supply of bottled water on the Las Vegas strip; and to obstruct, delay and affect "commerce" and the movements of articles and commodities in "commerce"; in that, Defendants did "falsely arrest/detain" Plaintiff merely for walking with a cooler and being known to sell bottled water on the Las Vegas Strip.

195.   Defendants actions described in paragraph 194, resulted in "extortion" of Plaintiff's inalienable rights; that is, defendants did wrongfully obtain control over Plaintiff's ability to engage in the harmless, ordinary, beneficial, economic/commercial avocation of providing bottled water to thirsty tourist from outside the state and country, at a competitive price. While defendants

73

never witnessed Plaintiff make a sale or propose to make a sale, they committed their actions while conducting the affairs of Clark County through the enforcement of CCC 6.04.130.

196. Defendants did then and there commit "robbery" and/or "extortion", by taking a cooler which contained about 15 bottles of water from within Plaintiff's presence, without his consent and under color of "official right".

197. If not for Defendants actions and if left unhampered by Officers employed by LVMPD, Plaintiff would have generated at least $100 in revenue the night of 9/17/16; and at least $200 the next day. Of the $300 generated on 9/17/16 and 9/18/16, about $60 would have been spent on ice and food from local enterprises that are customarily engaged in interstate/foreign commerce; such as Wal-Greens, CVS, Raising Cane's, 99 Cent Stores, etc. Of the $240 that would have been left over, Plaintiff would have taken half of that; and purchased 40 cases of "Members Mark" bottled water; which orginates in the State of Arkansas, from Sam's Club (an international corporation). The 40 cases of Members Mark bottled water, would have generated up to $1600 in revenue for Plaintiff

74

over the next 6-8 days; if left unmolested by Officers employed by LVMPD. Of the $1600 that would have been generated, Plaintiff would have spent an average of $25 - $35 a day on ice and food from local enterprises that are customarily engaged in interstate/foreign commerce. Instead however, because of the Defendants' actions, Plaintiff did not return to the strip to engage in the ordinary, beneficial avocation of selling water until 9/22/16.

198. Defendants committed their crimes pursuant to CCC 6.04.130; a policy, practice and/or custom promulgated by LVMPD to harrass and arrest people who walk on the strip with coolers, in furtherance of a plan to aid casinos and other corporations on the Las Vegas strip in monopolizing the exchange of money along the same, and in retaliation for filing and litigating 2:14-cv-00414-APG-PAL and A-14-703251-C.

199. Plaintiff alleges that the burden placed on interstate/foreign commerce by CCC 6.04.130 is excessive; because it is designed as a form of economic protectionism.

75

COUNT XXIV

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. I § 1 of the Nev. Const; Art 1 § 8 cl. 3, Art. VI Cl. 2 and the I, IV, IX and XIV Amendments of the U.S. Const.

Supporting Facts:

200.   On the 22nd day of September, 2016, at about the hour of 1135, within the unincorporated area of Clark County, while being employed by LVMPD and Conducting the affairs of Clark County through the enforcement of CCC 6.04.130 and/or CCC 16.11.070; aiding and abetting each other, Officers Stephens and Hutchins, did knowingly and willingly agree to artifically reduce the supply of bottled water on the Las Vegas strip; by "false arrest" and "extortion"; that is, Defendants, did arrest Plaintiff for allegedly storing materials (16.11.070); however, the real reason for the arrest was because Plaintiff was walking with a cooler and known to sell bottled water on the Las Vegas strip and an enforcement of CCC 6.04.130; thereby wrongfully obtaining control over Plaintiff's ability to engage in the harmless, ordinary, beneficial, economic/commercial avocation of providing bottled water which was purchased from an International Corporation and derived from sources outside the state,

76

to thirsty tourist from outside the state and country at a competitive price and location; resulting in the transfer of said ability to casinos and other corporations on the las Vegas strip, accepting their salaries and positions as Clark County employees along with the prospect of advancing within the enterprise of Clark County, as consideration for violating their duty to uphold the law.

201. Defendants did then and there commit "robbery," by taking a cooler and about 100 bottles of water from within Plaintiff's presence, without his consent and under color of official right.

202. Defendants did then and there commit "Kidnapping," by placing Plaintiff in the back of an LVMPD squad car to be transported to CCDC. Officer Artega did then and there aid and abet Defendants in the crimes described above in this count; in that while being aware of Defendants intent, being employed by LVMPD and Conducting the affairs of Clark County, he transported Plaintiff to CCDC.

203. Stephens and Hutchins did use an unreasonable amount of force in arresting Plaintiff; in that they slammed Plaintiff to the ground when he resisted their unlawful arrest; and then slammed

77

him to the ground again while handcuffed when Plaintiff attempted to get off the burning hot ground.

204. If not for the facts described in paragraphs 200 - 203, Plaintiff would have likely generated $250 - $300 from engaging in the harmless, ordinary, beneficial, economic/commercial avocation described in paragraph 200. About $40 - $50 of the revenue generated would have been used to purchase ice and/or food from local enterprises that are customarily engaged in interstate/foreign commerce; and the rest, would have been deposited into Plaintiff's U.S. Bank Account, where Plaintiff would have used it to purchase more goods and services in interstate/foreign commerce; and engaged in the aforementioned avocation indefinately.

205. Because defendants enforced CCC 6.04.130 and CCC 16.11.070 in furtherance of a plan to aid and abet Casinos and other corporations on the Las Vegas strip in monopolizing the exchange of money along the same and in retaliation for Plaintiff litigating case no 2:14-cv-00414-APG-PAL, the burden placed on interstate/foreign commerce is excessive and unreasonable.

78

COUNT XXV

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. I § 1 of the Nev. Const; Art. 1 § 8 cl. 3, Art. VI cl. 2 and the I, IV, IX and XIV Amendments of the U.S. Const.

Supporting Facts:

206.   On the 30th day of September, 2016, at approximately 1100 hours, while being employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130; Defendants Stephens and Phillips, aiding and abetting each other, did knowingly and willingly agree to artifically reduce the supply of bottled water on the Las Vegas strip; and to obstruct, delay and affect "commerce," and the movements of articles and commodities in "commerce;" by "extortion," that is, defendants did wrongfully obtain control of Plaintiff's ability to engage in the harmless, ordinary, beneficial, economic/commercial avocation of providing bottled water which was purchased from an international corporation and derived from sources outside the state, to thirsty tourist from outside the state and country at a competitive price; by falsely arresting Plaintiff without probable cause for walking with a cooler and being known to sell bottled water on the Las Vegas strip without a

79

a valid warrant; thereby transfering Plaintiff's ability to engage in the ordinary, beneficial avocation described above to casinos and other corporations ~~as~~ ~~the~~ along the Las Vegas strip.

207.  Defendants did then and there commit "robbery;" by taking money, a cooler and approximately 90 bottles of water from within Plaintiff's presence, without his consent; and "Kidnapping;" by placing Plaintiff in the back of an LVMPD Van to be transported to CCDC and held for ransome (bail).

208.  Once Plaintiff arrived at CCDC, he learned of a policy implemented by high ranking officers employed by LVMPD; which is contrary to LVMPD's current policy to only issue Class II citations for misdemeanor offenses due to over crowding at CCDC; to perform a full booking of Plaintiff anytime he is seen on the Las Vegas strip with a cooler; which Plaintiff alleges is responsible for the injuries contained in the balance of this complaint.

209.  If not for the defendants actions described above in paragraphs 206-208, Plaintiff would have generated up to $300 from engaging in the ordinary, beneficial avocation of providing bottled water to thirsty tourist from outside the state and country

80

at a competitive price, spent about $15 on ice from Wal-Greens and/or CVS in the process, and spent another $10-$12 on food. Furthermore, the next day, Plaintiff would have spent roughly $100 on 25 35-packs of Nestle Purelife; which would have generated up to $900 from it's sale over the next 3 days; in which Plaintiff would have spent between $20-$30 on ice to keep the water cold and food to replenish himself during breaks.

210. The actions described above in paragraphs 206-209, resulted in the depletion of Plaintiff's resources; by forcing him to pay $250 to Brooks Bail Bonds to get out of jail and another $100 on a suitcase to sell his water. Further, the actions described above also interfered with Plaintiff's right to travel; as they ultimately caused Plaintiff to be unable to register his vehicle, put gas in his car, maintain insurance and pay his car note; which led to his car being repossessed.

211. Plaintiff alleges that Defendants committed their actions as a result of LVMPD's failure to properly train it's employees; a policy, practice and/or custom promulgated by LVMPD to show a deliberate indifference to the Constitutional rights of Natural Persons; in retaliation for Plaintiff litigating case no.

81

2:14-cv-00414-APG-PAL; and in furtherance of a plan to aid and abet casinos and other corporations on the Las Vegas Strip in monopolizing the exchange of money along the same.

COUNT XXVI

Violations: 15 U.S.C. §§1, 2 and 15; 18 U.S.C. §§1951 and
1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460
(NV Common Law); Art. I §1 of the Nev. Const; Art. I
§8 cl.3, Art. VI cl.2 and the I, IV, IX and
XIV Amendments of the U.S. Const.

Supporting Facts:

212.   On the 4th day of October, 2016, at approx.
1100 hours, within the unincorporated area of Clark
County, while employed by LVMPD and conducting the
affairs of Clark County through the enforcement of
CCC 6.04.130; Stephens and Phillips, aiding and abetting
each other, did knowingly and willingly agree to
artifically reduce the supply of bottled water on
the Las Vegas strip; and to obstruct, delay and
affect "commerce", and the movements of articles and
commodities in "commerce", by "extortion", that is defendants
did wrongfully obtain control over Plaintiff's ability
to engage in the ordinary, beneficial avocation of providing
bottled water that was purchased from International
Corporation and derived from sources outside the
state, to thirsty tourist from outside the state and
country at a competitive price; by falsely arresting
Plaintiff for merely being in possion of a suitcase
that contained bottled water and being known to
sell bottled water on the Las Vegas strip; eventhough,

83

defendants never actually witnessed Plaintiff make a sale or propose to make a sale; in fact, defendants actually witnessed Plaintiff give a bottle of water away free of charge; defendants made this arrest without a warrant; thereby transfering Plaintiff's ability to engage in the ordinary, beneficial avocation described above to Casinos and other corporations along the Las Vegas Strip.

213. Defendants did then and there commit "robbery;" by taking money and a suitcase filled with approx. 20 bottles of water from within Plaintiff's presence, ~~~~ without his consent.

214. Defendants did then and there commit "Kidnapping;" by placing Plaintiff in the back of an LVMPD vehicle to be transported to CCDC; where he was held until approx. 2000 on 10/6/2016 on a 48-hour delay.

215. During the arrest described above in paragraphs 212-214, Stephens did maliciously twist Plaintiff's wrist while he was cuffed for the purpose of causing harm/pain to Plaintiff; while Phillips showed a deliberate indifference and failed to intervene.
\\                                                                                    //
\\                                                                                    //

216.   Upon information and belief, the facts contained in paragraphs 215 were committed in retaliation for Plaintiff filing and litigating case nos. 2:14-cv-00414-APG-PAL and A-14-703251-C.

217.   If not for the facts contained in paragraphs 212-216, Plaintiff would have generated up to $900 from engaging in the ordinary, beneficial avocation of providing bottled water to thirsty tourist from outside the state and country at a ~~competitive~~ competitive price. In the process of engaging in the avocation described above, Plaintiff would have spent an average of $25-$35 per day on ice to keep his water and food to replenish himself. Further, the proceeds of Plaintiff's activities would have been deposited into his U.S. Bank Account; where he would have used it to purchase more goods and services in interstate/foreign commerce; and engaged in the aforementioned avocation indefinately.

218.   The actions described in paragraphs 212-217 also violate Plaintiff's right to travel; as it caused Plaintiff to be unable to register his car, pay his car note, maintain insurance on his car, put gas in his car and ultimately led to his car being repossessed.

219. Finally, Plaintiff alleges that the facts contained in paragraphs 212-219 were the result of LVMPD's failure to properly train it's employees; an established policy promulgated by LVMPD to show a deliberate indifference to the Constitutions and Laws of the United States of America and the State of Nevada; and in furtherance of a plan to aid and abet casinos on the Las Vegas strip in monopolizing the exchange of money along the same.

220. The Clark County District Attorney either declined to pursue charges for the arrest described above and/or dismissed the charges resulting from the arrest described above.

COUNT   XXVII

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. I § 1 of the Nev. Const.; Art. I § 8 cl. 3, Art. VI cl. 2, and the I, IV, IX and XIV Amendments of the U.S. Const.

Supporting Facts:

221.   On the 7th day of November, 2016, Plaintiff purchased 4 24 packs of Crystal Geyser Natural Alpine Spring Water (derived from sources in the State of California); from Vons/Safeway (an international corporation, licensed to do business locally and customarily engaged in inter-state/foreign commerce); with the intent of selling it to thirsty tourist from outside the state and Country, on the Las Vegas strip at the competitive price of $1.00.

222.   Plaintiff engaged in the ordinary, beneficial avocation described in paragraph 221 from about 11:00 am - 4:00 pm; at which time, Plaintiff became hungry and headed towards Nathan's Hot Dogs to eat. However, at approx. 4:15 pm, Defendants Browhaw, Chase and John Doe # 18, did knowingly and willingly agree to artificially reduce the supply of bottled water

87

on the Las Vegas strip; by obstructing, delaying and affecting "commerce," and the movements of articles and commodities in "commerce;" by "extortion," "false arrest" and "kidnapping;" that is, defendants did wrongfully obtain control over Plaintiff's ability to engage in the ordinary, beneficial avocation described in paragraph 221; resulting in the transfer of said ability to Casinos and other corporations on the Las Vegas strip; by arresting Plaintiff for engaging in the avocation described above, and holding him to be transported to CCDC. Plaintiff warned defendants that they were violating his inalienable rights under the IX Amendment and Art. I §1 of the Nev. Const; and that their actions amounted to extortion, robbery, and kidnapping of a world banker who customarily uses federal reserve notes to engage in interstate/foreign commerce; to which defendants responded: "that's nice" and proceeded with their actions. When Plaintiff asked these defendants why they were violating their oaths of office to protect and defend both the State and Federal Constitutions, they responded with: "Don't violate the County Ordinance; as if somehow, a mere county ordinance could supercede the Constitutions and Laws of the United States of America and the State of Nevada.

88

223. Defendants Lara-Marquez and Haynes did aid and abet the crimes mentioned above by transporting Plaintiff to CCDC and filling out an arrest report. Plaintiff warned Haynes that he and his co-conspirators/co-defendants were violating his inalienable rights by conducting the affairs of Clark County through a pattern of racketeering activity and anti-competitive conduct; to which Haynes responded; "I have a job, which trains me to take you to jail for violating the County Ordinance."

224. The facts contained in paragraphs 221-223 were committed pursuant to CCC 6.04.130; in furtherance of a plan to aid and abet casinos and other corporations on the Las Vegas strip in monopolizing the exchange of money along the same; in retaliation for Plaintiff litigating case nos: 2:14-cv-00414-APG-PAL and A-14-703251-C; and are the result of LVMPD's failure to properly train its' employees on Constitutional law.

225. Once arrived at CCDC, Plaintiff was denied his sincerely held religious belief to eat only kosher/Halal food; and denied his right to "access the courts" by being placed in the

89

North Tower, where he had no access to the Legal kiosk, nor was he able to get pen and paper to draft documents in his 3 pending legal actions. Plaintiff was finally released from CCDC at around 10:30 pm on the 9th day of November, 2016.

226. if not for defendants' actions, described above in paragraphs 221-225, Plaintiff would have spent $10 - $12 on food from Nathan's Hot Dogs; spent $4.98 on two 10 pound bags of ice from Wal-Greens; generated at least $70 more in revenue from engaging in the ordinary, beneficial avocation of selling bottled water to thirsty tourist from outside the state and country at a competitive price; and purchased 16 32-packs of Nestle Pure Life bottled water, which originated in the State of California, from Wal-Mart Stores Inc.(an international corporation customarily engaged in interstate and foreign commerce) for $63.68 on 11/7/2016.

227. Over the next 3-4 days (from 11/8/2016 - 11/11/2016), Plaintiff would have generated over $500.00 in revenue from the sale of bottled water to thirsty tourist from outside the state at a competitive price. Additionally, at

90

the start of each day, Plaintiff would have spent $3 at the 99 cents store; and once the ice had melted, Plaintiff would have spent $4.98 on ice from Wal-Greens. Also, on each of these 3-4 days, Plaintiff would have spent $10-$12 on food from restaurants; such as; Subway, The Earl of Sandwich, Chipotle and Raising Cane's Chicken Fingers.

228. Plaintiff would have then been able to purchase 35 cases of Members Mark bottled water; which originated in the state of Arkansas; from Sam's Club; an international corporation which is customarily engaged in local, interstate and foreign commerce. Over the next 7-8 days (11/11/16 - 11/18/16), Plaintiff would have generated between $1300 and $1400 in revenue from the sale of Members Mark bottled water at a competitive price; of which $18 - $20 per day would have been spent on ice to keep the water cold; and food for Plaintiff to eat.

229. The actions above also violate Plaintiff's right to travel by preventing him from being able to pay for car insurance on his vehicle, properly maintaining his vehicle, pay the note on his vehicle, put gas in his vehicle, and register his car.

91

230.   Defendants committed their actions' described in paragraphs 221-230 while being employed by LVMPD, ~~and~~ conducting the affairs of Clark County through the enforcement of CCC 6.04.130, in retaliation for Plaintiff litigating case nos: 2:14-cv-00414-APG-PAL and A-14-703251-C, in furtherance of a plan to aid and abet casinos and other corporations on the Las Vegas strip in monopolizing the exchange of money along the same, and in furtherance of a plan to obstruct, delay and injure Plaintiff in his litigation.

231.   The Clark County District Attorney dismissed the charges resulting from the arrest described in paragraphs 221-225, after Plaintiff filed a Notice of Appeal to the denial of his Motion to Dismiss for Lack of Jurisdiction and Failure to State facts that Constitute a Public Offense

COUNT XXVIII

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.380; and N.R.S. 200.460 (NV Common Law); Art. I § 1 of the Nev. Const; Art. I §§ cl. 3, Art. VI cl. 2, and the I, IV, IX and XIV Amendments of the U.S. Const.

Supporting Facts:

232. On the 14th day of November, 2016, at 1642 hours, within the unincorporated area of Clark County, while being employed by LVMPD and conducting the affairs of Clark County through the enforcement of CCC 6.04.130; Murray and Smith, aiding and abetting each other, did knowingly and willingly agree to artifically reduce the supply of bottled water on the Las Vegas strip; by obstructing, delaying and affecting "commerce," and the movements of articles and commodities in "commerce" by "extortion" and "false arrest", that is defendants did wrongfully obtain control over plaintiff's ability to engage in the ordinary, beneficial, economic and commercial avocation of providing bottled water to thirsty tourist from outside the state and country at a competitive price; by arresting Plaintiff for engaging in the aforementioned avocation and holding him to be transported to CCDC.

93

233. Defendants did then and there commit "robbery;" by taking a suitcase which contained a wastebasket with approx. 23 bottles of water and a dolley, from within Plaintiff's presence, without his consent; and "kidnapping;" by placing Plaintiff in the back of an LVMPD squad car to be transported to CCDC; where he would be held until approx. 0400 on the 17th day of November, 2016.

234. Murdock did aid and abet the crimes mentioned above, by transporting Plaintiff to CCDC. Sgt. Peterson did aid and abet the crimes mentioned above; described in paragraphs 232-233, by accepting Plaintiff into CCDC when it was LVMPD policy to issue only Class II citations for misdemanor offense.

235. Once arrived at CCDC, Plaintiff was denied his religious freedom by being denied a Kosher diet, a Bible and a Quran while he was in the holding cells. Additionally, Plaintiff was denied his right to "access the courts" by being denied paper and a pen to draft legal documents and being placed in the North Tower for a non-violent offense, where inmates are placed on a minimum of 20-hour lockdown

94

per day. It is LVMPD policy to not to give religious diets and legal supplies in the holding cells; to not give kosher trays until an inmate takes some special class which has a 3-4 week waiting list; and to place inmates who are known to use the grievance system and "access the courts" in the North Tower, where they will have less access to the legal kiosk for research.

236.    If not for defendants actions, described in paragraphs 232-235, Plaintiff would have generated $50 from selling water on 11/14/2016. Plaintiff would have then donated/sold his plasma and received $50; which would have been shipped out of state. Plaintiff would have then used the $50 received from donating plasma to purchase 15 32-packs of bottled kroger water; which is bottled in the state of Ohio. Over the next 5 days (11/15/16 - 11/19/16), Plaintiff would have generated up to $500 from the kroger water; which was purchased from an International Corporation (Smith's); and spent $25 - $35 per day on ice and food. Finally, the proceeds of the activities mentioned above, would have been placed in a U.S. Bank Account; where it would have been placed in his U.S. Bank Account; where it would have been used to purchase more goods and services

95

in Interstate and foreign commerce.

237. Defendants actions also violate Plaintiff's right to travel; as they have caused Plaintiff to be unable to register his car, pay his car note, maintain insurance on his car, put gas in his car and make interstate trips.

238. Finally, Plaintiff alleges that the actions described above in paragraphs 232-237 were committed pursuant to CCC 6.04.130; were the result of LVMPD and Clark County failing to properly train their employees; an established policy by Clark County and LVMPD to show a deliberate indifference to the Constitutions and laws of the United States of America and the State of Nevada; and in furtherance of a plan to aid and abet casinos and other corporations on the Las Vegas strip in monopolizing the exchange of money along the same.

COUNT IXXX

Violations: 15 U.S.C. §§ 1, 2 and 15; 18 U.S.C. §§ 1951 and 1961-1968; N.R.S. 200.310; N.R.S. 200.460 (NV Common Law); Art. 1 s§1 of the Nev. Const.; Art. I s 8 cl. 3, Art. VI cl. 2, and the I, IV, IX and XIV amendments of the U.S. Const.

Supporting Facts:

239.   On the 17th day of November, 2016, Plaintiff made special visitation to the courtroom of Justice of the Peace, Eric Goodman; regarding LV Justice Court case no. 16M26675X. When Plaintiff's case was called, Judge Goodman ignored Plaintiff's due process right to the presumption of innocence; and issued a stay out order to Plaintiff for the Resort Corridor (LV strip) pursuant to N.R.S. 4.373(1). Explicitly stating that: "I'm taking that right (to be on the strip and exercise inalienable rights) away from you (Plaintiff)." Judge Goodman made this decision based on the Prosecutor telling him that Plaintiff had 11 open cases for violating CCC 6.04.130 and/or similar codes; apparently taking Judicial Notice that Plaintiff ~~that the~~ was an individual who is customarily engaged in inter-state and foreign "commerce."

97

240.   Defendant Goodman's actions described in paragraphs 239, resulted in the artificial reduction of goods and services on the Las Vegas strip; and the obstruction, delay and affect on "commerce," and the movements of articles and commodities in "commerce," by "extortion" and the threat of "kidnapping," in that they resulted in the Judge Goodman wrongfully obtaining control over Plaintiffs ability to engage in ordinary, beneficial, economic/commercial avocations of providing goods and services that originated outside the state of Nevada, to tourist from outside the state and country, at a competitive price and location; and the transfer of said ability to Casinos and other corporations along the Las Vegas strip.

241.   Goodman's actions also injure Plaintiff in his right to travel; in that, if caught anywhere on the Las Vegas strip, Plaintiff would be Kidnapped by Officers employed by LVMPD and held indefinately at CCDC.

242.   Goodman comitted his actions pursuant to CCC 6.04.130, in furtherance of a plan to aid and abet casinos and other corporations in monopolizing the exchange of money along the

the Las Vegas strip and in retaliation for Plaintiff filing case nos 2:14-cv-00414-APE-PAL and A-14-703251-C.

243.   Upon information and belief, Goodman campaign contributions, his salary as a Justice of the Peace, and the Prospect of becoming a Judge for the Eighth Judicial District Court of Clark County, Nevada; as consideration for violating his oath of Office and duty to up-hold the law.

## COUNT ~~XX~~ ~~XXX~~

The following civil rights has been violated: Deprivation of the right to life, liberty, pursuit of happiness i.e. acquiring / possessing property and development of faculties.

Supporting Facts: [Include all fact you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

244. The facts contained in paragraphs 1 - 243 caused Plaintiff to lose his car, to not pursue the proper education and training to maximize his potential as a human being, to be unable to make interstate trips and be unable to attend his sisters' wedding ceremony in the Dominican Republic.

245. Additionally, the facts contained in paragraphs 1 - 243 caused case no 2:14-cv-00414-APG-PAL to be dismissed.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you filed other actions in state or federal courts involving the **same or similar facts** as involved in this action?  ✓ Yes ____ No.  If your answer is "Yes", describe each lawsuit. (If more than one, describe the others on an additional page following the below



100

outline).

a) Defendants: _Clark, et al._

b) Name of court and docket number: _This Court @ 2:14-cv-00414-APC-PAL_

c) Disposition (for example, was the case dismissed , appealed or is it still pending?):
   _dismissed_

d) Issues raised: _____

   _____

   _____

e) Approximate date it was filed: _March, 2014_

f) Approximate date of disposition: _December, 2016_

2) Have you filed an action in federal court that was **dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted?** ____ Yes ✓ No. If your answer is "Yes", describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page following the below outline.)

Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:

a) Defendants: _____.

b) Name of court and case number: _____.

c) The case was dismissed because it was found to be (check one): _____ frivolous ____ malicious or ____ failed to state a claim upon which relief could be granted.

d) Issues raised: _____

   _____

e) Approximate date it was filed: _____

f) Approximate date of disposition: _____

Lawsuit #2 dismissed as frivolous, malicious, or failed to state a claim:

a) Defendants: _____.

b) Name of court and case number: _____.

101

c)  The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d)  Issues raised: _____
_____

e)  Approximate date it was filed: _____

f)  Approximate date of disposition: _____

Lawsuit #3 dismissed as frivolous, malicious, or failed to state a claim:

a)  Defendants: _____.

b)  Name of court and case number: _____.

c)  The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d)  Issues raised: _____
_____

e)  Approximate date it was filed: _____

f)  Approximate date of disposition: _____

3)  Have you attempted to resolve the dispute stated in this action by seeking relief from the proper administrative officials, e.g., have you exhausted available administrative grievance procedures? ____ Yes ____ No. If your answer is "No", did you not attempt administrative relief because the dispute involved the validity of a: (1) ____ disciplinary hearing; (2) ____ state or federal court decision; (3) ____ state or federal law or regulation; (4) ____ parole board decision; or (5) ____ other _____.

If your answer is "Yes", provide the following information. Grievance Number _____.

Date and institution where grievance was filed _____.

Response to grievance: _____
_____
_____

102

- - - - - - - - - - - - - - - - - - -

### E. REQUEST FOR RELIEF

I believe that I am entitled to the following relief:

Compensatory Damages   TBD

Punitive Damages        TBD

Injunctive Relief

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

James Williams
(Name of Person who prepared or helped
prepare this complaint if not Plaintiff)

_____
(Signature of Plaintiff)

Feb. 13, 2018
(Date)

- - - - - - - - - - - - - - - - - - - - - - - -
(Additional space if needed; identify what is being continued)

103